[Cite as *Long v. Rice*, 2014-Ohio-5310.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| RANDY LONG, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-A-0023** |
| RALPH RICE, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Ashtabula County Court, Eastern Division.
Case No. 2012 CVF 00319.

Judgment: Affirmed.

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Plaintiff-Appellant).

*Katherine S. Riedel*, Law Offices of Katherine S. Riedel Co., L.P.A, Jefferson Commercial Park, 1484 State Route 46 North, Suite 5, Jefferson, OH 44047 (For Defendant-Appellee).

TIMOTHY P. CANNON, P.J.

{¶1}   Appellant, Randy Long, appeals the judgment of the Ashtabula County Court, Eastern Division, entering judgment in favor of appellee, Ralph Rice, on Mr. Long's fraudulent misrepresentation claim.  For the following reasons, we affirm the judgment of the trial court.

{¶2}   Mr. Long initiated this action by filing a small claims complaint, claiming Mr. Rice sold him a defective used tractor in a private sale and seeking $3000 in

damages. A small claims hearing was held on September 10, 2012. Following the close of Mr. Long's case, Mr. Rice made a motion to dismiss for failure to demonstrate a right to relief, pursuant to Civ.R. 41(B)(2). The trial court granted the motion on the grounds that the testimony did not establish fraudulent misrepresentation, especially given Mr. Long's failure to diligently inspect the tractor prior to the purchase. Mr. Long appealed the judgment of the trial court. *Long v. Rice*, 11th Dist. Ashtabula No. 2012-A-0056, 2013-Ohio-2402 (*Long I*). We held that Mr. Long presented unrebutted evidence sufficient to withstand dismissal of his small claims complaint, and the matter was reversed and remanded for a new hearing. *Id.* at ¶26-28.

{¶3} Following remand, the matter was transferred to the trial court's regular docket upon motion of Mr. Long, and his demand was increased to $5500. The case was retried to the bench on February 11, 2014.

{¶4} It is undisputed that Mr. Long entered into an oral agreement with Mr. Rice for the private sale of a used tractor around June 2011 for use on his small farm. Neither party is a mechanic, nor is Mr. Rice a dealer or vendor of any kind. In exchange for the tractor, Mr. Long traded his fully-operational 8N Ford tractor and paid $2000 in cash. Mr. Long admits that he completed the purchase without first inspecting or testing the tractor.

{¶5} Mr. Long testified that he explained to Mr. Rice the tractor had to be "ready to go to the field." According to Mr. Long, Mr. Rice stated the tractor "worked good," "was ready to go to the field," and the only thing wrong with the tractor was the necessity of vice grips to keep the fuel pump from leaking. When Mr. Rice delivered the tractor, before the exchange of money took place, Mr. Long observed the tractor

2

smoking. According to Mr. Long's testimony, Mr. Rice stated the tractor smoked because it was the first time the tractor had been started that year and that it would quit once it "warmed up." Mr. Long admitted he should have canceled the deal at this point, but he did not.

{¶6} Over the next few days, in changing and checking the oil, Mr. Long determined the fuel pump was not functioning correctly. Mr. Long explained he confronted Mr. Rice, who agreed to contribute $500 to have the fuel pump repaired. After Mr. Long installed the repaired fuel pump, however, the tractor continued to smoke and have mechanical issues. Mr. Long took the tractor to a mechanic; there, he learned the engine had a blown head gasket and a cylinder groove—serious mechanical defects that require a new engine block. Mr. Long unsuccessfully attempted to get back his tractor and money from Mr. Rice. Mr. Long never made any further repairs, and the tractor remains in disrepair.

{¶7} Richard Ring testified as part of Mr. Long's case. Mr. Ring previously sold the tractor to Mr. Rice for $1000. Mr. Ring explained that he informed Mr. Rice the hydraulic system did not function to his satisfaction and the "power takeoff rattled a little bit"; thus, Mr. Long argued that Mr. Rice knew the tractor was defective prior to the sale at issue but omitted these material facts. Mr. Ring indicated the tractor was old and had a lot of upkeep on it, explaining he sold the tractor to Mr. Rice essentially for the value of its tires.

{¶8} Thomas Jones also testified on behalf of Mr. Long. Mr. Long had taken the engine block to Mr. Jones, who indicated that it had a blown head gasket and was beyond repair. He also indicated it had been that way for quite some time. Mr. Jones

3

provided Mr. Long with an estimate of $4400 to repair the engine, which included replacing the engine block with a used part.

{¶9}   Mr. Rice testified that the tractor was in rough shape when he bought it from Mr. Ring in the spring of 2010.  He stated his uncle spent a lot of time fixing it up, but that it "smoked from the day I bought it till the day I sold it."  Mr. Rice stated that Mr. Long inquired whether the tractor was "ready to go to the field."  In response, Mr. Rice said, "I can tell you what I used it for last year.  * * *  But I didn't do a lot of things with it so I couldn't guarantee anything[.]"  Mr. Rice testified he told Mr. Long that vice grips were necessary to keep the fuel pump from leaking and the three-point hitch had a homemade lever.  According to Mr. Rice, when Mr. Long asked about the smoke upon delivery of the tractor, Mr. Rice simply said "yes, it does" smoke, because it was obvious.

{¶10} After Mr. Long confronted Mr. Rice about the faulty fuel pump, he contributed $500 to have it repaired.  When Mr. Long attempted to get back his tractor and money from Mr. Rice, Mr. Rice offered to exchange the tractors but was not willing to return the $2000.  Mr. Rice testified that Mr. Long refused the tractor exchange.  At that point, Mr. Rice told him, "it was not my problem."

{¶11} Three witnesses also testified on behalf of Mr. Rice.  Timothy Beebe, a friend of Mr. Rice who works as an industrial maintenance mechanic, testified he helped Mr. Rice with routine maintenance on the tractor.  He stated that he never saw any evidence of a blown head gasket and that the tractor could operate with a blown head gasket without the operator being aware of the problem.  Jacob Rice and Sonya Oliver both testified to using the tractor the previous year.  Jacob, Mr. Rice's son, testified the

4

tractor had been used for "field work, haying, [and] prepar[ing] an oak field with the plow and disk * * *." Sonya, Mr. Rice's neighbor, testified she personally "[baled] hay with it on [her] property and the adjoining property" without any problems.

{¶12} Written closing arguments were submitted to the bench, and the trial court issued a judgment entry on March 20, 2014, entering judgment in favor of Mr. Rice. The court found that Mr. Long failed to prove his claim of fraudulent misrepresentation by a preponderance of the evidence.

{¶13} Mr. Long timely appeals and raises one assignment of error:

{¶14} "The trial court's decision is against the manifest weight of the evidence."

{¶15} Mr. Long frames his issue presented for review as whether he presented "sufficient evidence to sustain his burden of proof." However, that is not the issue in a manifest weight challenge to a civil verdict.

{¶16} "Sufficiency" and "weight" are distinct terms, "both quantitatively and qualitatively different," and are analyzed differently under the law. *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. In *Eastley v. Volkman*, the Ohio Supreme Court applied the analysis found in *Thompkins* to civil cases, explaining that it is not appropriate to analyze "weight" and "sufficiency" arguments under a merged standard of review. 132 Ohio St.3d 328, 2012-Ohio-2179, ¶17. If an appellate court was required "to determine only whether there is sufficient evidence to support a civil * * * verdict, then there would never be any review of manifest weight of the evidence in these cases." *Id.* at ¶18 (stating why the Court's analysis in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978) had been misinterpreted). Accordingly, Mr. Long's statement of the issue and of the standard of review is incorrect.

5

**{¶17}** "[E]vidence must * * * exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley* at ¶19. Sufficiency of the evidence is "a term of art meaning that legal standard which is applied to determine whether the case may go to the [trier of fact] or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Thompkins* at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* In contrast:

> [w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'

*Eastley* at ¶12, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶18}** When reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." *Thompkins* at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [verdict] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [verdict]." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶19}** Mr. Long's complaint has been characterized as a fraudulent misrepresentation claim. *See Long I*, *supra*, at ¶2. To succeed on a claim for fraudulent misrepresentation in the sale of personal property, Mr. Long must establish

6

the following elements: (1) a false representation, or the concealment of a material fact, made falsely; (2) knowledge of the falsity, or statements made with such recklessness that knowledge is inferred; (3) intent to mislead another into relying on the representation; (4) justifiable reliance upon the representation or concealment; and (5) injury as a consequence of that reliance. *Goddard v. Stabile*, 185 Ohio App.3d 485, 2009-Ohio-635, ¶30 (11th Dist.2009).

**{¶20}** In entering judgment for Mr. Rice, the trial court stated the following:

> [D]efendant did not make any knowing, affirmative misrepresentations upon which plaintiff was lawfully permitted to reasonably rely. In view of plaintiff's scanty evaluation of the tractor before purchase, and in light of the defendant's testimony, the court finds that plaintiff's reliance upon statements of defendant, if any, was at no time reasonable. A person in defendant's position is permitted some degree of "puffing" in selling this tractor. This defendant told the plaintiff there were no guarantees.

**{¶21}** Mr. Long takes issue with the trial court's characterization of Mr. Rice's alleged statements as puffery. Although the trial court suggests that some puffery by Mr. Rice would have been appropriate during a sale of the tractor, the testimony reveals that the point of sale conversation was disputed at trial. Therefore, the issue before the trial court was not merely whether any statements made by Mr. Rice were puffery, but whether the statements attributed to Mr. Rice by Mr. Long were in fact made.

**{¶22}** At trial, the following relevant testimony was offered by Mr. Long: (1) he told Mr. Rice "the hydraulics had to run good and it had to be ready to go the field or I wanted nothing to do with it"; (2) Mr. Rice responded that "it all worked good and it was ready to go to the field"; (3) the only problem Mr. Rice spoke of was the vice grips on the fuel pump. Further, on cross-examination, Mr. Long admitted that Mr. Rice told him he had used the tractor in his fields.

7

{¶23} However, on these same points, Mr. Rice offered the following testimony: (1) Mr. Long asked whether the tractor was "ready to go to the field"; (2) he replied with exactly what the tractor had been used for the previous year—pull wagons, brush hog, bale hay, disc—and could not guarantee how it would perform in the future; (3) he told Mr. Long the fuel line required a pair of vice grips to avoid fuel leaks and that there was a "homemade lever for the three-point hitch." In addition, Mr. Rice denied having any knowledge of a blown head gasket or of any issue with the hydraulics at the time of sale.

{¶24} Accordingly, even if Mr. Long's version of the point of sale conversation is sufficient to establish a fraudulent misrepresentation claim, it was disputed by Mr. Rice's testimony. The trial court, as trier of fact, determined the more credible evidence and testimony weighed in favor of Mr. Rice. Based on the evidence presented at trial, we hold the trial court did not lose its way when entering judgment in favor of Mr. Rice.

{¶25} Further, Mr. Long makes reference to our opinion in *Long I*, in which we stated that Mr. Long "justifiably relied" on Mr. Rice's statement that the tractor was "field ready." *Long I* at ¶20-22. Reliance on our previous opinion for such a proposition is misplaced. We also stated in *Long I* that the unrefuted evidence presented by Mr. Long was sufficient to withstand a motion to dismiss, because Mr. Rice had not presented a defense to dispute the testimony. *Id.* Mr. Rice never had an opportunity to do so, as the trial court granted the motion to dismiss following Mr. Long's case in chief. Our review in *Long I* was limited to the unrefuted testimony of Mr. Long and his witness; such is not the case here.

{¶26} Mr. Long's assignment of error is without merit.

8

{¶27} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court, Eastern Division, is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.