[Cite as *Golubski v. US Plastic Equip., L.L.C.*, 2015-Ohio-4239.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO


| | | |
|---|---|---|
| ROBERT J. GOLUBSKI, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2015-P-0001 |
| UNITED STATES PLASTIC EQUIPMENT, LLC, et al., | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |


Civil Appeal from the Portage County Court of Common Pleas, Case No. 2013 CV 00365.

Judgment: Affirmed in part, reversed in part, and remanded.


*Peter P. Lorenz* and *Oliver T. Koo,* 250 South Chestnut Street, Suite 23, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Scott J. Flynn,* Flynn, Keith & Flynn, 250 South Water Street, P.O. Box 762, Kent, OH 44240 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, United States Plastic Equipment, LLC., appeals from the judgment of the Portage County Court of Common Pleas, following a trial to the bench, ruling appellee, Robert J. Golubski, submitted sufficient, persuasive evidence that he acquired ownership of certain real property through both adverse possession and the

doctrine of acquiescence. We affirm in part, reverse in part, and remand the matter for further proceedings.

{¶2} The parties in this matter are adjoining landowners. The dispute involves a portion of boundary property extending approximately 15' from the south side of appellee's home. Appellee moved into the home in September 1976. From the time appellee purchased the home he was told by the former owners of the parcel (now owned by appellant), Harlan and Gladys Luce, that the 15' swath was part of his property. Appellee cultivated a garden on the land, raised chickens, tended flower beds, and maintained the remainder as though it was part of his yard. And, in order to demarcate the purported boundary line, Mr. Luce planted a lilac bush over the boundary and explained the property line went through the bush.

{¶3} In 2000, appellee had the land surveyed. The survey revealed the southern border of his property did not include the 15' portion at issue; instead, the line was less than 1' from the southern wall of his home. Notwithstanding the survey, appellee still utilized and maintained the property as he had always done.

{¶4} Sometime between 2000 and 2004, after Mr. and Mrs. Luces passed away, Nancy Thomason, the Luces' daughter, took title to the property. Ms. Thomason grew up on the property and lived with her parents from time to time. She never took issue with appellee's use of the land and further believed the disputed portion belonged to him by virtue of the manner in which her parents and appellee maintained their relative properties. In 2011, a foreclosure action was initiated against Ms. Thomason. An order of foreclosure was eventually entered and the property was scheduled for a sheriff's sale.

{¶5}   Paul Miller, who has a home on the other side of the property owned by Thomason, has lived at his residence since 1996.  Mr. Miller is the sole owner of appellant, a company that makes injection molding equipment.

{¶6}   Appellant purchased the subject property at the Sheriff's sale.  After the purchase, appellee voiced his concerns about the potential boundary issue to Mr. Miller.  According to appellee, he spoke with Mr. Miller twice, who indicated he was not worried about the boundary and explained he was "not going to do anything about it."

{¶7}   Appellant ultimately donated the home on the parcel to a local historical society, which removed the building from the land; it also hired a landscaping company to clean up the remainder of the land.  As part of the clean up, the landscaping company removed the lilac bush planted by Mr. Luce.

{¶8}   Appellee subsequently filed a complaint seeking to quiet title to the boundary in his favor.  Appellee alleged he owned the subject property by operation of adverse possession as well as the doctrine of acquiescence.  Appellee additionally sought a temporary restraining order and preliminary and permanent injunctions.

{¶9}   In the complaint, appellee claimed the true boundary line had been established by the lilac bush.  Appellee asserted the area in question was approximately 12' wide and extended approximately 230' in the westerly direction.  At trial, however, various witnesses testified that the location was approximately 15' from the side of appellee's home.

{¶10}   In its answer and counterclaim, appellant admitted it was the owner of the adjoining plot since December 2012.  Appellant denied, however, the allegations relating to the lilac-bush boundary and claimed the boundary runs within one foot of

3

appellee's home and through part of appellee's attached chimney. Appellant admitted removing the lilac bush, but maintained the bush was on its property. Appellant asserted a counter-claim for trespass, loss of business activity, loss of beneficial use, and emotional distress. Appellee answered the counter-claims and denied the allegations.

{¶11} A bench trial was held before the magistrate. After conclusion of trial, the magistrate issued his decision, quieting title in appellee's favor by operation of both adverse possession and the doctrine of acquiescence. The magistrate further found appellant's counter-claims were either unsupported by law or the evidence. The magistrate ordered the boundary line to run east and west, where the lilac bush formerly grew, approximately 15' from the south wall of appellee's home. The trial court filed an interim order adopting the magistrate's decision.

{¶12} Appellant filed objections to the magistrate's decision. Appellee duly opposed the objections. And, on December 8, 2015, the trial court determined appellant's objections were not well taken and adopted the magistrate's decision in full.

{¶13} Appellant now appeals, assigning seven errors for our review. For his first assignment of error, appellant contends:

{¶14} "The trial court committed prejudicial error in concluding that appellee's alleged use of the disputed property constituted adverse possession."

{¶15} Appellate review of an adverse possession claim depends upon whether an appellant is challenging a trial court's evidentiary determination or legal conclusion. *See, e.g., Hardert v. Neumann*, 4th Dist. Adams No. 13CA977, 2014-Ohio-1770, ¶8. We apply a deferential review to an appellant's claims that a trial court's findings are

4

against the manifest weight of the evidence. *Id.* Alternatively, we conduct a de novo review of an appellant's challenges to the trial court's application of law. *Id.* Because appellant's first assignment of error challenges the trial court's application of law, we review it de novo.

{¶16} It is well established that to succeed in acquiring title by adverse possession, a claimant must show exclusive possession that is open, notorious, continuous, and adverse for 21 years. *Grace v. Koch*, 81 Ohio St.3d 577, 579 (1998), citing *Pennsylvania Rd. Co. v. Donovan*, 111 Ohio St. 341, 349-350, (1924). Failure of proof on any of the elements results in failure to acquire title by adverse possession. *Id.* at 349; *see also Hofka v. Hanson*, 11th Dist. Ashtabula Nos. 2012-A-0007 and 2012-A-0008; 2013-Ohio-1285, ¶20. Because a successful claim of adverse possession results in the forfeiture of legal title of property without compensation, the doctrine is disfavored and the elements of such a claim are stringent. *Grace, supra*, at 580.

{¶17} To successfully obtain title through adverse possession, the claimant must show that the possession is "* * * hostile and adverse and * * * accompanied by visible acts which outwardly demonstrate occupation and ownership so as to give notice for the statutory period. * * *" *Montieth v. Twin Falls United Methodist Church*, 68 Ohio App.2d 219, 222 (9th Dist.1980). In other words, the adverse possessor must "'* * * unfurl his flag on the land and keep it flying so that the owner may see, if he will, an enemy has invaded his domains and planted the standard of conquest.'" *Cannone v. Levy*, 11th Dist. Trumbull No. 91-T-4560, 1991 Ohio App. LEXIS 6232, *9 (Dec. 20, 1991), quoting *Barnhart* v. *Detroit, Toledo & Ironton Rd. Co.*, 8 Ohio Law Abs. 22, 23 (4th Dist.1929).

5

**{¶18}** "'It is well established that a possession is not hostile or adverse if the entry is by permission of the owner, or the possession is continued by agreement; such an occupancy, consequently, confers no right.'" *Hicks v. Certified Oil Corp.*, 11th Dist. Trumbull No. 3877, 1988 Ohio App. LEXIS 3210, *5 (Aug. 5, 1988), quoting 2 Ohio Jurisprudence 3d 512-514, Adverse Possession, Sec. 18. Accordingly, no adverse rights may be predicated upon permissive use. *Donovan, supra*, at 350.

**{¶19}** Appellant asserts the trial court erred in ruling appellee's activities on the disputed property constituted adverse possession. He cites various cases, which have collectively underscored that "mere maintenance of the land, such as mowing the grass, cutting weeds, planting a few seedlings, and minor landscaping, is not sufficient to trigger the statutory time period for adverse possession." *Cannone, supra, at* *8, 1991), citing *Montieth, supra* ; *see also Adams v. Zalek*, 4th Dist. Ross No. 98CA2460, 2000 Ohio App. LEXIS 1080 (Mar. 14, 2000) (planting of flowers and trimming of bushes do not establish use of the land that is adverse to the titled holder); *McKenna v. Boyce*, 5th Dist. Muskingum No. Ct 2012-0014, 2012-Ohio-5163 (mowing and flower gardening were insufficient to constitute adverse possession); *Suever v. Kinstle* 3d Dist. Allen No. 1-88-24, 1989 Ohio App. LEXIS 4451 (Nov. 29, 1989) (periodic mowing of grass, raking leaves, and minor landscaping insufficient to establish adverse possession).

**{¶20}** Appellant asserts that appellee only produced evidence of minor landscaping and that he kept a garden until 1997. Pursuant to the foregoing authority, therefore, appellant contends appellee failed to adduce sufficient evidence to establish adverse possession. We agree that appellee failed to establish a case for adverse possession because his use was not truly "adverse."

6

**{¶21}** The evidence demonstrated that appellee purchased the home in September 1976. He testified his predecessors in ownership, the Langes, were utilizing and taking care of the area in question when he bought the home. That is, the Langes were using the area for gardening, flower beds, and maintaining the remainder as part of their yard. Appellee further testified that his neighbors, the true owners, the Luces, permitted appellant's actions. And the evidence further established Ms. Thomason, the daughter of the Luces and the successor owner of the subject property to the Luces, also openly acceded to appellee's maintenance of the swath. The permissive use, which included minor landscaping, mowing, and maintenance of a garden, cannot be deemed adverse.

**{¶22}** Even though appellee's use may have been open, notorious, exclusive, and continuous for over a 21-year period, there was simply no evidence that this use was adverse. It is axiomatic that adverse or hostile use is necessary for a claim of adverse possession. Because appellee's use, which, in effect, involved minor grooming of the property, was admittedly premised upon the Luces express permission, he failed to establish this element. The trial court therefore erred in adopting the magistrate's decision as it relates to appellee's adverse possession claim.

**{¶23}** Appellant's first assignment of error has merit.

**{¶24}** Appellant's second assignment of error provides:

**{¶25}** "The trial court committed prejudicial error by incorrectly applying the doctrine of acquiescence."

**{¶26}** Under this assignment of error, appellant argues the trial court erred when it ruled appellee was entitled to ownership of the land in question via the doctrine of

7

acquiescence because appellant did not acquiesce to the location of the alleged agreed boundary. Appellant contends the doctrine of acquiescence only applies when the boundary is mutually agreed upon by the adjoining landowners or the purchasing party has notice from his or her grantor. Because neither condition was satisfied, appellant argues the trial court misapplied the doctrine. We do not agree.

{¶27} The doctrine of acquiescence is applicable in instances where adjoining land owners occupy their properties up to a certain line and mutually acknowledge and treat that boundary as though it is the actual boundary separating their properties. *See, e.g., Hofka*, *supra*, ¶33. "Acquiescence rests on the practical reality that oftentimes, the true boundary line location is uncertain and neighbors may themselves establish boundaries." *Merriner v. Goddard*, 7th Dist. Monroe No. 08-MO-2, 2009-Ohio-3253, ¶57. The doctrine is applicable when: (1) the adjoining landowners treat a specific line as the boundary; and (2) the line is so treated for a period of years, most often the period required for adverse possession. *Hofka*, *supra*. If a claimant is attempting to invoke the doctrine against a recent purchaser of the property, the claimant must demonstrate the purchaser had notice "'of his grantor's recognition of the property line as mutually agreed by the adjoining landowners.'" *Id.* at ¶34, quoting *Ormandy v. Dudzinski*, 9th Dist. Lorain No. 10CA009890, 2011-Ohio-5005, ¶26. It therefore follows that if a purchaser has notice of the pre-existing boundary acquiescence, he or she enters the agreement with knowledge that the metes and bounds set forth on record do not reflect the mutually recognized boundary line to which his or her grantor agreed. And, as a result, the purchaser is accordingly bound to the recognized boundary by operation of the doctrine of acquiescence.

8

{¶28} The record demonstrates Mr. Miller, the president and sole officer of appellant, did not enter the transaction for the purchase of the Luce/Thomason land as an innocent third-party. Mr. Miller had lived as a neighbor to appellee's property and the Luce/Thomason property since 1996. At trial, appellee testified he discussed the agreed-upon boundary between himself and the Langes with Mr. Miller two times prior to appellant's purchase of the land. Furthermore, Ms. Thomason testified she also spoke with Mr. Miller about the boundary line that she, her parents, and appellee mutually recognized. She testified that, in 2006 or 2007, she had occasion to speak with Mr. Miller on the issue because he had landscapers mowing his lawn and apparently part of her lawn. Ms. Thomason testified she advised Mr. Miller to communicate to the landscapers not to mow past the area where the lilac bush was planted because that represented the boundary between her property and appellee's.

{¶29} Although Mr. Miller is not a party to this case, he is the president and sole officer of appellant; Mr. Miller, in effect, was not simply the transparent signatory of appellant, but was the sole decision-making force of the company during the bidding process as well as the purchase. Notice of the recognized boundary line, therefore, should be imputed to appellant by virtue of Mr. Miller's foreknowledge of the same. *See, e.g., First Nat'l Bank of New Bremen v. Burns*, 88 Ohio St. 434 (1913), paragraph two of the syllabus (the knowledge of the company's employees and officers is imputed to the corporation).

{¶30} Appellant next asserts the trial court ignored the fact that Ms. Thomason was *not* the actual grantor; hence, he maintains the doctrine of acquiescence is inapplicable. In this case, the bank which foreclosed upon the property was the party

9

from whom appellant purchased the property.  We do not, under these circumstances, view this as a bar to the application of the doctrine of acquiescence.

{¶31}  Although appellant purchased the property through a sheriff's sale after a formal foreclosure proceeding, the testimony at trial demonstrated that appellant was actually aware of the recognized boundary line.  It would generally follow, a third-party purchaser of property at a sheriff's sale would have no reason to know of the previous owner's and his or her neighbor's acquiescence to a boundary line different from that on record.  Where, as here, however, the evidence demonstrates the purchaser had actual notice of the acquiescence, it would be inequitable to ignore the purchaser's knowledge simply because the property was purchased from a grantor-bank who obtained ownership via a judgment in foreclosure.  While holding otherwise might be consistent with the technical letter of the law, it would completely disregard its spirit.  We decline to allow the letter of the law to obscure its purpose.  The spirit of the law is, after all, the touchstone of interpretation.  *See State ex rel. Conway v. Taylor*, 136 Ohio St. 174, 181 (1939).

{¶32}  Appellant, via Mr. Miller's foreknowledge, was on notice of the acquiescence; this knowledge arose from Mr. Miller's conversations with his neighbors, one of whom was the prior owner of the property.  Because the intervening foreclosure did not affect Mr. Miller's awareness, we accordingly hold it did not affect the applicability of the doctrine of acquiescence.  Appellant's argument lacks merit.

{¶33}  Appellant next argues the trial court erred in adopting the magistrate's decision because there was an actual mistake as to the true boundary line.  According

10

to appellant, the doctrine of acquiescence applies only when parties are under no mistake as to the true boundary line. We do not agree.

{¶34} First of all, appellant did not specifically raise this objection to the magistrate's decision. Failure to file objections to an alleged error in a magistrate's decision functions to waive the issue for appeal save plain error. *See, e.g., Marshall v. Firster*, 11th Dist. Trumbull No. 99-T-0147, 2000 Ohio App. LEXIS 4589, *4-*5 (Sept. 29, 2000). "The plain error doctrine provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial." *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985). We discern no plain error.

{¶35} As indicated above, the doctrine of acquiescence is premised upon the "practical reality" that the location of actual boundaries may be uncertain between adjoining neighbors. *Hofka, supra*, at ¶34; *see also Merriner, supra*; *Richardson v. Winegardner*, 3d Dist. Allen No. 1-99-56, 1999 Ohio App. LEXIS 5151, *8 (Nov.2, 1999). Accordingly, the doctrine permits such neighbors to enter an agreement to set such boundaries; and when the agreement is followed by possession for the requisite statutory period, the agreed-upon boundary becomes conclusive. *Hofka, supra*. Appellant's argument fails to establish plain error.

{¶36} Appellant's second assignment of error lacks merit.

{¶37} Appellant's third assignment of error provides:

{¶38} "The trial court's determination to relocate the true boundary line under the doctrines of adverse posses[s]ion and acquiescence was against the manifest weight of [the] evidence."

11

{¶39} Preliminarily, we have previously determined, under appellant's first assignment of error, that the magistrate's conclusion relating to appellee's adverse possession claim was not supported by sufficient evidence. We consequently need not address the weight of the evidence on this claim because any such argument is moot. We shall limit our analysis, therefore, to the weight of the evidence supporting appellee's acquiescence claim.

{¶40} Appellant first argues the trial court's judgment is against the manifest weight of the evidence because it substantially relied upon an unclear aerial photograph to aid in determining the property line as well as an undated photograph of a fire barrel that it purportedly used to determine the edge of the south boundary line. We do not agree.

{¶41} The magistrate's decision demonstrates that, although the photographs were considered as evidence in support of appellee's case, they were not the primary evidence upon which the magistrate based his conclusions. The magistrate detailed the evidence of the specific agreement appellee and Mr. Luce entered regarding the settled boundary line and the manner in which they elected to demarcate the same. This agreement occurred at some point immediately after appellant purchased the property in 1976. Even though the magistrate considered the photographic evidence, we find no error; it is clear the magistrate did not "substantially" rely upon the photographs to support his findings and conclusions. Rather, the decision was primarily based upon the testimony of the witnesses. The photographs, at most, provided a form of visual orientation to assist the trier of fact with the testimony submitted. Appellant's argument lacks merit.

**{¶42}** Appellant next asserts the trial court erroneously relied upon the biased testimony of Ms. Thomason. We do not agree.

**{¶43}** It is well settled that, in considering a challenge to the weight of the evidence, a reviewing court must consider all the evidence in the record, the reasonable inferences that can be drawn therefrom, and the credibility of witnesses. *Long v. Rice*, 11th Dist. Ashtabula No. 2014-A-0023, 2014-Ohio-5310, ¶18. The trier of fact, however, is in the best position to weigh the evidence and assess the credibility of witnesses. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶44}** In this matter, Ms. Thomason, the daughter of the Luces, lived as appellee's neighbor on-and-off from the time appellee purchased the home. Given her history as both a resident and an owner of the adjoining property, we discern no error in the trial court accepting Ms. Thomason's testimony as credible as it related to appellee's use of the disputed property as well as the agreement between appellee and the Luces.

**{¶45}** As discussed thoroughly under appellant's second assignment of error, there was adequate evidence before the trial court to support the conclusion that appellee met his burden of production and persuasion, by clear and convincing evidence. Appellee was therefore entitled to relief under the doctrine of acquiescence. We accordingly hold the magistrate's decision, in this respect, is supported by the weight of the evidence and the trial court did not err in adopting the same.

**{¶46}** Appellant's third assignment of error is without merit.

**{¶47}** Appellant's fourth assignment of error provides:

**{¶48}** "The trial court erred by failing to recognize that O.R.C. 5301.21 provides the exclusive remedy for the settlement of property line disputes."

{¶49} A review of the record demonstrates appellant failed to raise this defense in his answer to appellee's complaint. And, although appellant defended the suit exclusively by arguing that the evidence did not support appellee's claims for adverse possession and acquiescence, it did tangentially raise this issue in its objections. Nevertheless, there was no evidence submitted to support appellant's position that R.C. 5301.21 completely supplants the doctrine of acquiescence and represents the exclusive remedy for property-line disputes.

{¶50} R.C. 5301.21 provides:

{¶51} When the owners of adjoining tracts of land, or of lots *in a municipal corporation*, agree upon the site of a corner or line common to such tracts or lots, in a written instrument containing a pertinent description thereof, either with or without a plat, executed, acknowledged, and recorded as are deeds, such corner or line thenceforth shall be established as between the parties to such agreement, and all persons subsequently deriving title from them.

{¶52} Such agreement shall be recorded by the county recorder in the official records. The original agreement, after being so recorded, or a certified copy thereof from the record, is competent evidence in any court in this state against a party thereto, or person in privity with a party. (Emphasis added.)

{¶53} Appellant, in its objections and in its appellate brief omits the phrase "in a municipal corporation." There was no evidence that the subject property was located within a municipal corporation; indeed, the complaint indicates it is located in Mantua

14

*Township*. Townships are not municipal corporations. *Carroll v. Washington Twp. Zoning Comm.*, 56 Ohio St.2d 164, 167 (1978). Accordingly, R.C. 5301.21 is inapplicable to this case and clearly does not abrogate legal relief premised upon the doctrine of acquiescence.

{¶54} Appellant's fourth assignment of error lacks merit.

{¶55} Appellant's fifth assignment of error asserts:

{¶56} "The trial court erred by granting appellee's claims under both doctrines of adverse possession and acquiescence, which are mutually exclusive."

{¶57} The magistrate acknowledged that a case, out of this district, had previously observed that a claim of adverse possession and the doctrine of acquiescence are incompatible. *See McGregor v. Hanson*, 11th Dist. Geauga No. 99-G-2228, 2000 Ohio App. LEXIS 2666 (June 16, 2000). The magistrate determined, however, that the circumstances of this case "should allow [the] alternative claims." We agree the magistrate erred in drawing this conclusion. Given our disposition of appellant's first, second, and third assignments of error, however, the magistrate's statement is of no consequence.

{¶58} In *McGregor*, this court noted, "[b]ecause the doctrines of acquiescence and adverse possession are mutually exclusive, a determination that adjoining property owners have acquiesced in a certain boundary line precludes a determination that one property owner has adversely possessed his neighbors property." *Id.* at *12. This is an accurate statement of law. As discussed above, a claim cannot be legally adverse if entry on the property is by permission or possession is continued by agreement. *Hicks, supra*. As a matter of law, therefore, a claimant cannot maintain mutual claims for

15

adverse possession and acquiescence. The latter requires a permissive agreement, while the former precludes such an arrangement. Because, however, we hold the trial court erred in granting appellee relief on his adverse possession claim, but did not err in granting relief under the doctrine of acquiescence, the trial court's statement has no impact on the case. In short, while the statement was error, it was, under the circumstances, harmless.

{¶59} Appellant's fifth assignment of error lacks merit.

{¶60} Appellant's sixth assignment of error provides:

{¶61} "The trial court erred by failing to properly set forth a formal and enforceable description of the disputed property."

{¶62} Appellant asserts the trial court erred by merely relocating the true boundary line without setting forth a more formal delineation of the new boundary. Appellant asserts the trial court's relocation was not sufficiently specific to establish an enforceable description of the property line. We agree.

{¶63} The trial court determined the property line should run east to west intersecting the point where the lilac bush was formerly planted. In his decision, the magistrate stated the lilac bush was located approximately 15 feet south of appellee's home. In his brief, appellee concedes, however, the center/intersecting point of the lilac bush is 13 feet, 11 inches off the survey line. In his complaint, appellee asserted the boundary line extended 230 feet from Route 44, going in a westerly direction. Although these dimensions are not necessarily ambiguous, they fail to properly finalize the property to which appellee was granted legal ownership. We therefore conclude the

16

matter must be remanded to the trial court to set forth a final, legal description of the property in question.

{¶64} One final point requires attention. Appellant claims that the trial court failed to order that the disputed property be conveyed to appellee; in fact, appellant asserts it is unclear whether appellee actually forfeited the disputed property or whether the boundary line was simply moved. Appellant's construction of the judgment is not entirely accurate. Although the judgment does not specifically state that ownership of the disputed property was transferred to appellee, it does state that appellee's claims "are granted." The relief sought pursuant to these claims was that title to the land be quieted in appellee's name and that appellant forever be barred from having or claiming any right or title to the disputed property. Thus, by granting appellee's claims, appellee obtained the relief he sought.

{¶65} Because the trial court did not set forth a detailed description of the new property line, the judgment must be reversed and remanded for the limited purpose of establishing an accurate legal description of the newly drawn line.

{¶66} Appellant's sixth assignment of error has merit.

{¶67} Appellant's final assignment of error provides:

{¶68} "The trial court erred by dismissing appellant's counterclaim."

{¶69} Appellant filed counterclaims for trespass; loss of beneficial use of property; and emotional distress. Each counterclaim is premised upon appellant's position that it was the owner of the subject property. Because we have affirmed the trial court's judgment granting appellee's claim under the doctrine of acquiescence,

appellee, not appellant, has been the owner of the property since 1997. Appellant's counterclaims are therefore without merit.

{¶70} Appellant's seventh assignment of error lacks merit.

{¶71} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.