[Cite as *Alcus v. Bainbridge Twp.*, 2020-Ohio-543.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

JAMES ALCUS, et al.,                      :         **O P I N I O N**

      Plaintiffs-Appellants,        :

- vs -                                                    :         **CASE NO. 2019-G-0205**

BAINBRIDGE TOWNSHIP, et al.,       :

      Defendants-Appellees.        :

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2017 P 000872.

Judgment: Reversed and remanded.

*Kathleen J. St. John* and *David A. Herman,* Nurenberg, Paris, Heller & McCarthy, 600 Superior Avenue, E., Suite 1200, Cleveland, Ohio 44114 (For Plaintiffs-Appellants).

*Douglas G. Leak, Kenneth A. Calderone,* and *Catherine E. Nagy,* Hanna, Campbell & Powell, LLP, 3737 Embassy Parkway, Suite 100, Akron, 44333 (For Defendants-Appellees, Bainbridge Township, Bainbridge Township Trustees, and Francis Bularz).

*James R. Gallagher* and *Laura E. Plank,* Gallagher Gams Tallan Barnes & Littrell LLP, 471 East Broad Street, 19th Floor, Columbus, Ohio 43215 (For Defendant-Appellee, State Farm Fire & Casualty Company).

MARY JANE TRAPP, J.

{¶1} Appellants, James Alcus ("Mr. Alcus") and Patricia Alcus ("Mrs. Alcus") (collectively, the "Alcuses"), appeal the decision of the Geauga County Court of Common Pleas granting summary judgment to appellees, Bainbridge Township, the Bainbridge

Township Trustees (collectively, the "Township"), and Francis Bularz ("Mr. Bularz"), based on political subdivision immunity pursuant to R.C. Chapter 2744.

{¶2} The Alcuses' claims against the Township and Mr. Bularz are based on Mr. Alcus' physical injuries and damage to his vehicle caused by a rolling backhoe that Mr. Bularz had parked in a negligent manner at the Township's service department premises prior to Mr. Alcus' arrival to pick up toolboxes his employer had purchased.

{¶3} The Alcuses argue the trial court erred by (1) granting summary judgment to the Township on the basis that the exceptions to political subdivision immunity under R.C. 2744.02(B)(2) and/or R.C. 2744.02(B)(4) do not apply, and (2) granting summary judgment to Mr. Bularz on the bases that the Alcuses did not sue him in his individual capacity and that the exception to Mr. Bularz's immunity under R.C. 2744.03(A)(6)(b) does not apply.

{¶4} After a careful review of the record and pertinent law, we find the trial court erred by granting summary judgment to the Township and to Mr. Bularz based on statutory immunity.

{¶5} First, the Alcuses met their burden to establish the exception to the Township's immunity under R.C. 2744.02(B)(2) involving an employee's negligent performance of a proprietary function:

{¶6} (a) The specific activity that caused the accident was Mr. Bularz's parking of the backhoe. This activity does not constitute the governmental function of the "maintenance of public grounds" under R.C. 2744.01(C)(2)(e). The parking of a backhoe does not constitute "maintenance," and even if it did, the service department premises do not constitute "public grounds."

2

{¶7} (b) The parking of the backhoe and/or the maintenance of nonpublic grounds also do not meet the criteria for a "governmental function" set forth in R.C. 2744.01(C)(1)(a), (b), or (c). Thus, the Township was engaged in a proprietary function.

{¶8} As a result of this holding, whether the Alcuses met their burden to establish the exception to the Township's immunity under R.C. 2744.02(B)(4) is moot.

{¶9} Second, the Township did not meet its burden to establish the defense to liability under R.C. 2744.03(A)(5). Mr. Bularz's decision whether to use the parking brake on the backhoe constitutes a routine matter of safe operation that did not involve a high degree of discretion or judgment.

{¶10} Finally, the Alcuses met their burden to establish genuine issues of material fact as to whether the exception to Mr. Bularz's immunity under R.C. 2744.03(A)(6)(b) applies. The Alcuses' complaint demonstrates they sued Mr. Bularz in his individual capacity, and whether the evidence establishes Mr. Bularz's conduct was reckless or wanton is a question of fact for the jury, not a court.

{¶11} Thus, we reverse the judgment of the Geauga County Court of Common Pleas and remand for further proceedings consistent with this opinion.

**Substantive and Procedural History**

{¶12} The Township owns the property located at 17800 Haskins Road, Chagrin Falls, Ohio (the "Haskins Road property"), which contains, among other things, the Township's service department premises. The service department has responsibility over the Township's parks, cemetery, roads, and buildings. The service department premises are developed with multiple structures, pavement, and a fence. The structures include a

3

main office building, a vehicle storage building, a maintenance area, and numerous cold-storage structures. The premises are fenced in and contain a front gate.

### Use of the Premises

{¶13} During the service department's hours of operation (7:00 a.m. to 3:00 p.m., Monday through Friday), it is open to the public. Members of the public may enter through the open gate. The public typically comes to the service department to file a complaint, ask a question regarding a service (e.g., cemetery, grounds keeping), rent a township property (e.g., dining hall for an event), or address other business. All visitors are required to sign in at the service department office, where most of their concerns or issues are addressed. On occasion, visitors may walk or drive to other locations within the premises. Visitors are not permitted to freely come into the maintenance area. A service department employee typically escorts or accompanies them as a measure of safety and to make sure they reach the correct destination pertinent to their particular issue.

### The Accident

{¶14} On November 17, 2015, Mr. Bularz, a Township employee, was removing and replacing a tree located in front of the Township's service garage building located within the service department premises. Mr. Bularz uprooted the tree and loaded it onto a truck using a backhoe. While his co-workers went to get the new tree, Mr. Bularz transferred the unused soil to the auxiliary lot located in another portion of the premises.

{¶15} During his work, Mr. Bularz believed there was a problem with the backhoe's brakes, so he drove the backhoe from the auxiliary lot to the maintenance garage. He stopped the backhoe outside of the maintenance garage door, kept the engine running, put the gear in neutral, and put the front loader bucket down. The

4

backhoe has a diesel engine that could not simply be turned on and off but had to idle and cool to avoid damage. Mr. Bularz also surveyed the area to see if anything or anyone was located behind the backhoe. It is undisputed that he did *not* engage the parking brake. He then got off the backhoe and went inside the maintenance garage to speak with a mechanic. The evidence also indicates Mr. Bularz parked the backhoe on an incline.

{¶16} While Mr. Bularz was inside the maintenance garage, Mr. Alcus arrived at the service department premises to pick up toolboxes that his employer had purchased through the "GovDeals" auction website. After signing in, he was directed to drive his pickup truck and park it at a location behind the backhoe. Shortly after Mr. Bularz got off the backhoe, Mr. Alcus and a Township employee were loading one of the toolboxes onto Mr. Alcus' pickup truck. The backhoe rolled backwards toward them, struck Mr. Alcus' left arm, and knocked him to the ground. The backhoe also struck and damaged Mr. Alcus' vehicle.

{¶17} Mr. Alcus was a resident of New York, and his employer had procured a workers' compensation and employers liability policy from State Farm & Casualty Company ("State Farm"). Following the accident, Mr. Alcus filed a claim for workers' compensation benefits, and State Farm paid certain benefits under the policy.

### The Cause of the Accident

{¶18} The Township concedes that Mr. Bularz acted negligently by failing to engage the backhoe's parking brake. The mechanic who subsequently inspected the backhoe's brakes determined they were operating properly and were not in need of repair or maintenance.

5

{¶19} The manufacturer of the backhoe recommends that an operator park it by leaving the engine running, placing the gear in neutral, dropping the implements (i.e., a front end loader bucket, a rear backhoe arm and bucket, and outriggers on each side) to the ground, and setting the parking brake. In addition, the applicable OSHA regulation states "[w]henever the equipment is parked, the parking brake shall be set." *See* 29 C.F.R. 1926.600(a)(3)(ii). The Township held regular safety meetings and provided safety programs and OSHA-related training. Operators of the backhoe were trained to drop one of the implements on the ground and engage the parking brake before getting off the backhoe.

{¶20} The Alcuses' expert, a mechanical engineer, stated that the grade where the backhoe was parked was sufficient to cause the machine to roll. He opined that the cause of the accident was Mr. Bularz's failure to engage the parking brake and take further reasonable precautions to secure the backhoe from rolling.

{¶21} The Township's expert, a professional engineer, opined that the cause of the accident was "simple operator error." Mr. Bularz should have set the parking brake and followed the manufacturer's recommended operating procedure when he stopped and left the backhoe idling outside the garage door.

### The Complaint

{¶22} The Alcuses subsequently filed a complaint against the Township, Mr. Bularz, and State Farm in the Geauga County Court of Common Pleas. The Alcuses also named two other Township employees as defendants but later voluntarily dismissed them from the lawsuit.

6

{¶23} The Alcuses sought compensatory damages against the Township, alleging that by and through the negligent actions of its employees, it (1) caused a physical defect in the form of a backhoe to exist within or on the grounds of a building used in connection with a governmental function, (2) was negligent with respect to proprietary functions in which its employees were engaged, and/or (3) was negligent in the operation of a motor vehicle, i.e., the backhoe.

{¶24} The Alcuses also sought compensatory damages against Mr. Bularz, alleging that while acting within the course and scope of his employment, he negligently, recklessly, and with wanton disregard for the safety of others (1) created a physical defect on the premises in the form of a backhoe parked on a hill despite being aware that the brakes were malfunctioning, and (2) failed to secure the backhoe to prevent it from rolling down the hill in the direction of Mr. Alcus.

{¶25} The Alcuses further sought punitive damages against Mr. Bularz, alleging that while acting within the course and scope of his employment, he knowingly and with wanton disregard for the safety of Mr. Alcus created a dangerous property defect by parking the backhoe on a hill without properly securing the machinery to prevent it from rolling downhill. Mrs. Alcus asserted a consortium claim against the Township and Mr. Bularz.

{¶26} With respect to State Farm, the Alcuses sought declaratory judgment that it does not have any right of subrogation or reimbursement, or alternatively, that any such

7

right is subordinate to and dependent on the Alcuses' right to receive full compensation for all injuries and damages.[1]

{¶27} The Township and Mr. Bularz filed a joint answer denying the Alcuses' allegations and asserting the affirmative defense of political subdivision immunity. The parties engaged in discovery, including several depositions and the exchange of expert witness reports, and subsequently engaged in extensive summary judgment proceedings.

### Summary Judgment Proceedings

{¶28} The Township filed a motion for summary judgment, arguing that as a political subdivision, it is entitled to immunity under R.C. 2744.02(A). The Township asserted it was engaged in the operation of its service department, which qualifies as a "governmental function" specified in R.C. 2744.01(C)(2)(e) ("'Governmental function' means * * * [t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds"). The Township characterized its actions on the day of the accident as involving "[t]he regulation of the use of, and the maintenance and repair of, road[s], highways, streets…".

{¶29} The Township also argued that the Alcuses' claims do not fall within any statutory exceptions to immunity set forth in R.C. 2744.02(B). According to the Township, the exception in R.C. 2744.02(B)(1) does not apply because Mr. Bularz was not driving a

---

1. State Farm participated in the parties' summary judgment proceedings and in this appeal regarding the issue of political subdivision immunity. It also moved for partial summary judgment on the issues of subrogation and reimbursement, which the trial court denied without discussion in the same judgment entry underlying this appeal. State Farm filed a separate notice of appeal relating to the issue of reimbursement, which we address in our opinion in Case No. 2019-G-0206. These appeals have not been consolidated.

"motor vehicle" at the time of the accident. Further, the exception in R.C. 2744.02(B)(4) does not apply because the negligent failure to activate the parking brake did not constitute a "physical defect."

{¶30} The Township further argued that even if an exception applies, the defense to liability set forth in R.C. 2744.03(A)(5) also applies, which precludes liability for loss resulting from "the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." According to the Township, Mr. Alcus' injuries resulted from the exercise of judgment or discretion in how to use equipment, i.e., the backhoe, and there is no evidence the Township exercised its judgment with malice, in bad faith, or in a wanton or reckless manner.

{¶31} The Alcuses filed a brief in opposition, arguing that the Township was engaged in a proprietary function at the time of the accident (or there was a genuine issue of material fact as to whether it was), so that the exception to immunity set forth in R.C. 2744.02(B)(2) applies, which involves an employee's negligent performance of a proprietary function. According to the Alcuses, the Township was not engaged in the "maintenance or repair of roads, highways, or streets" at the time of Mr. Alcus' injury. In the event the Township was claiming its activities involved the "maintenance of public grounds," the Alcuses asserted that the area where Mr. Alcus' injury occurred is not "public grounds." It also argued that none of the criteria for a "governmental function" set forth in R.C. 2744.01(C)(1)(a) through (c) applies.

9

{¶32} Alternatively, the Alcuses argued that even if the Township was engaged in a governmental function, the exception to immunity set forth in R.C. 2744.02(B)(4) applies, which involves employee negligence that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with a governmental function. According to the Alcuses, there is a genuine issue of material fact as to whether activity it characterized as "parking the backhoe on a slight grade with the engine running, but without the parking brake engaged" constitutes a "physical defect." The Alcuses did not argue that the Township was negligent in operating a "motor vehicle" under the exception in R.C. 2744.02(B)(1).

{¶33} Finally, the Alcuses argued that the defense to liability set forth in R.C. 2744.03(A)(5) does not apply to reinstate the Township's immunity. The Alcuses argued that immunity under this provision only attaches to a broad type of discretion involving public policy rather than negligence in carrying out details. According to the Alcuses, even if Mr. Bularz's decision was characterized as involving a high degree of discretion, a genuine issue of material fact existed as to whether his decision was reckless.

{¶34} The Township filed a reply brief responding to the Alcuses' arguments. Notably, the Township set forth a detailed description of the Haskins Road property and its uses. It also recharacterized its activities on the day of the accident, stating that Mr. Bularz was operating the backhoe as part of the maintenance of the service department grounds. It asserted that this activity constitutes an "express, statutory" governmental function under R.C. 2744.01(C)(2)(e). The Township argued that the service department premises constitute "public grounds" because they are open and accessible to the public.

Alternatively, the Township argued that Mr. Bularz's operation of the backhoe met the criteria of a "governmental function" set forth in R.C. 2744.01(C)(1)(a), (b), and/or (c).

{¶35} The Alcuses filed a surreply, disputing the Township's assertion that it was engaged in "maintenance" and that the service department's premises and the area where the injury occurred constitute "public grounds." They also disagreed with the Township's application of the criteria for "governmental functions" set forth in R.C. 2744.01(C)(1)(a), (b), and (c). The Township filed a reply to the Alcuses surreply.

{¶36} Mr. Bularz filed a separate motion for summary judgment arguing that he was immune from liability pursuant to R.C. 2744.03(A)(6)(b) because the Alcuses did not produce evidence that his conduct was malicious, in bad faith, wanton, or reckless. The Alcuses filed a brief in opposition, arguing that a genuine issue of material fact exists as to whether Mr. Bularz acted in a reckless or wanton manner. Mr. Bularz filed a reply.

### The Trial Court's Judgment Entry

{¶37} The trial court issued a judgment entry granting the Township's and Mr. Bularz's motions for summary judgment, concluding that the Alcuses did not meet their burden to show any exceptions to immunity apply.

{¶38} The trial court first determined that the backhoe was not a "motor vehicle" for purposes of the exception under R.C. 2744.02(B)(1).

{¶39} The trial court next determined that the Township was engaged in a "governmental function" under R.C. 2744.01(C)(2)(e) because Mr. Bularz operated the backhoe as part of the Township's maintenance of the Haskins Road property and the service department was "on public grounds."

{¶40} The trial court also determined that the Township was engaged in a "governmental function" under R.C. 2744.01(C)(1)(c) involving "a function that promotes or preserves the public peace, health, safety, or welfare" and "involves activities that are not engaged in or not customarily engaged in by nongovernmental persons." The trial court found the Township's disposal of the unneeded toolboxes by internet auction was "an essential, uniquely regulated governmental function."

{¶41} Thus, the trial court held that the exception to immunity set forth in R.C. 2744.02(B)(2) imposing liability for an employee's negligent performance of a proprietary function does not apply.

{¶42} The trial court further determined that the exception to immunity under R.C. 2744.02(B)(4) does not apply because there was no "physical defect," stating that "[a]n operator's failure to engage a parking brake does not show the brake was defective."

{¶43} Since it found the Alcuses had not established any exceptions to immunity, the trial court stated it was not required to address whether the Township had established the defense to liability set forth in R.C. 2744.03(A)(5).

{¶44} Finally, the trial court found that the complaint did not show the Alcuses sued Mr. Bularz in his individual capacity, and even if they had, there was no evidence he acted outside the scope of his employment, with malicious purpose, in bad faith, or in a wanton or reckless manner, or is subject to liability expressly imposed by statute pursuant to the exceptions set forth in R.C. 2744.03(A)(6).

{¶45} The Alcuses filed a notice of appeal and set forth three assignments of error for our review:

12

{¶46} "[1.] The trial court erred in granting summary judgment to Bainbridge Township and/or Bainbridge Township Trustees ("the Township") on the ground that the exception to immunity in R.C. 2744.02(B)(2) does not apply.

{¶47} "[2.] The trial court erred in granting summary judgment to the Township on the ground that the exception to immunity in R.C. 2744.02(B)(4) does not apply.

{¶48} "[3.] The trial court erred in granting summary judgment to the defendant-appellee Francis Bularz."

**Standard of Review**

{¶49} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶9. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Id.*

{¶50} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [75 Ohio St.3d 280 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its

13

case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶40.

{¶51} The "portions of the record * * * are those evidentiary materials listed in Civ.R. 56(C) * * * that have been filed in the case," which are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." *Dresher* at 296; Civ.R. 56(C).

{¶52} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112." *Ziccarelli* at ¶40.

{¶53} Whether a political subdivision is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).

{¶54} In addition, statutory interpretation presents a question of law. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, ¶6. The necessity of considering the facts or the evidence to determine whether a legislative act applies to a particular case does not turn the issue of statutory interpretation into a question of fact.

14

*Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶18, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148 (2000).

**Political Subdivision Immunity**

{¶55} The General Assembly enacted the Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744, in 1985 in response to the Supreme Court of Ohio's abolishment of common-law sovereign immunity in *Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26 (1982). *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, ¶13.

{¶56} The Township is a political subdivision of the State of Ohio. *See* R.C. 2744.01(F) ("'Political subdivision' means a * * * township"). R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000).

{¶57} First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. *Id.* at 556-57.

{¶58} Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *Id.* at 557. Once general immunity has been established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions apply. *Maggio v. Warren*, 11th Dist. Trumbull No. 2006-T-0028, 2006-Ohio-6880, ¶38.

{¶59} Third, if any of the exceptions in R.C. 2744.02(B) applies, the political subdivision has the burden of showing that one of the defenses to liability in R.C. 2744.03 applies, and if so, immunity is reinstated. *Greene Cty.* at 557.

{¶60} In this case, an analysis of the first step is not necessary, as the parties do not dispute that the Township is a political subdivision entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, our focus is on the second and third tiers of the analysis. The first inquiry is whether the Alcuses met their burden to establish the exceptions to immunity under R.C. 2744.02(B)(2) or R.C. 2744.02(B)(4). If so, the subsequent inquiry is whether the Township met its burden to establish the defense to liability under R.C. 2744.03(A)(5).

{¶61} Mr. Bularz is an employee of a political subdivision. Subject to three exceptions, employees of political subdivisions are immune from liability in a civil action brought "to recover damages for injury, death, or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function." R.C. 2744.03(A); *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶47. The exception to immunity relevant in this case is whether "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner * * *." R.C. 2744.03(A)(6)(b). Therefore, we must determine whether the Alcuses sued Mr. Bularz in his individual capacity, and if so, whether they met their burden to establish a genuine issue of material fact as to whether Mr. Bularz's actions were wanton or reckless.

16

**Exception to Immunity - R.C. 2744.02(B)(2)**

{¶62} In their first assignment of error, the Alcuses argue the trial erred by granting summary judgment to the Township on the grounds that the exception to immunity set forth in R.C. 2744.02(B)(2) does not apply.

{¶63} R.C. 2744.02(B)(2) states that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Accordingly, before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action - duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a proprietary function. *Anderson v. Warren Local School Dist. Bd. of Edn.*, 4th Dist. Washington No. 16CA21, 2017-Ohio-436, ¶42.

{¶64} The parties dispute whether Mr. Bularz was engaged in a governmental or a proprietary function.

*Governmental and Proprietary Functions*

{¶65} According to the Supreme Court of Ohio, "[i]n making the distinction between governmental functions and proprietary functions a key component of R.C. Chapter 2744 when it was enacted in 1985, the General Assembly has chosen to embrace a concept that was developed through the case law of this court prior to the adoption of that chapter * * *." *Greene Cty.* at 558. Thus, "a central consideration within the structure of R.C. Chapter 2744 is the premise that some activities of a political subdivision may be governmental functions, while some other activities are not." *Id.* at 560.

17

{¶66} "When a political subdivision's acts go beyond governmental functions (and when it acts in a proprietary nature) there is little justification for affording immunity to that political subdivision. 'Having entered into activities ordinarily reserved to the field of private enterprise, a [political subdivision] should be held to the same responsibilities and liabilities as are private citizens.'" *Id.* at 559, quoting *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 37 (1981).

{¶67} The mutually exclusive definitions of "governmental function" and "proprietary function" are set forth in R.C. 2744.01. *Greene Cty.* at 557. R.C. 2744.01(C) provides two routes to determine whether a given function is governmental. *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶12. First, the statute refers to the list in R.C. 2744.01(C)(2) of "specified" functions that the General Assembly has expressly deemed governmental. *Id.* In the alternative, a function is governmental if it meets one of three independent standards enumerated in R.C. 2744.01(C)(1)(a) through (c). *Id.*

{¶68} Inversely, a "proprietary function" is a function that either (1) is specifically listed in R.C. 2744.01(G)(2), which lists examples of proprietary functions, or (2) is not described in R.C. 2744.01(C)(1)(a), (b), or (C)(2) and "promotes or preserves the public peace, health, safety, or welfare and involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1); *Moore* at ¶11.

### Governmental Function - R.C. 2744.01(C)(2)(e)

{¶69} One of the "governmental functions" specified in R.C. 2744.01(C)(2)(e) is "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]"

18

The trial court found that Mr. Bularz was operating the backhoe as part of the Township's maintenance of the Haskins Road property, which includes the service department. It further found that the service department is "on public grounds."

{¶70} Whether a function is governmental or proprietary must be determined by "defining what it is that the political subdivision is actually doing when performing the function." *Kenko Corp. v. Cincinnati*, 183 Ohio App.3d 583, 2009-Ohio-4189, ¶27 (1st Dist.), quoting *Allied Erecting & Dismantling Co. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, ¶23 (7th Dist.).

{¶71} The Supreme Court of Ohio has rejected an overly broad characterization of a political subdivision's activities. For instance, in *Greene Cty.*, a county agricultural society brought action against a hog exhibitor and others for allegedly violating exhibition rules at a livestock competition at a county fair. *Id.* at 552. The defendants filed a counterclaim for violation of due process and defamation, and the society asserted immunity under R.C. Chapter 2744. *Id.* at 552-53.

{¶72} In determining whether the society was engaged in a proprietary or governmental function, the Supreme Court of Ohio stated "the issue here is not whether holding a county fair is a governmental function; rather, it is the more specific question of whether conducting the hog show at the county fair and conducting the investigation into the allegations of irregularity surrounding the entry of [the winning pig] in that hog show are governmental functions." *Id.* at 560. The court ultimately held that the society was engaged in a proprietary function, even though holding a county fair with hog contests is a governmental function. *Kenko Corp.* at ¶29, citing *Greene Cty.* at 561.

{¶73} In personal injury cases, "courts look at the particular, specific activity that allegedly resulted in the plaintiff's injury." *DSS Services, LLC v. Eitel's Towing*, LLC, 10th Dist. Franklin No. 18AP-567, 2019-Ohio-3158, ¶18. For example, in *DSS Services*, a township fire department responded to an accident scene involving an overturned dump truck. *Id.* at ¶2. The township authorized a towing company to right the overturned truck, but the process used caused significant damage to the truck. *Id.* The truck owner sued the township for negligence, and the township asserted political subdivision immunity. *Id.* at ¶3.

{¶74} In determining whether the township was engaged in a governmental or proprietary function, the Tenth District stated: "[W]e must focus on the specific activity of righting and towing the truck, not the more general actions of responding to and handling an accident scene, to determine the nature of the function at issue." *Id.* at ¶19. This is consistent with the views of other courts. *See, e.g., Plank v. Bellefontaine*, 3d Dist. Logan No. 8-17-18, 2017-Ohio-8623, ¶20 (holding that the applicable "function" was that for which the plaintiff "seeks to hold the political subdivision liable"); *Hignett v. Schwarz*, 9th Dist. Lorain No. 10CA009762, 2011-Ohio-3252, ¶18 (holding that the relevant "activity" was the one being "engaged in at the time [plaintiff] was injured"); *Milbert v. Wells Twp. Haunted House, Inc.*, 7th Dist. Jefferson No. 15 JE 0023, 2016-Ohio-5643, ¶24 ("[T]he question of whether the township was entitled to immunity depends upon whether an employee negligently performed an act that caused the plaintiff's injury").

{¶75} The evidence in this case establishes that the negligent method Mr. Bularz utilized to park the backhoe caused injury to Mr. Alcus and damage to his vehicle. Therefore, we must determine whether the specific activity of parking the backhoe

constitutes the maintenance of public grounds under R.C. 2744.01(C)(2)(e) and thereby qualifies as a governmental function. *See DSS Services* at ¶19 ("The question before us, therefore, is whether righting and towing a truck constitutes a fire service and thereby qualifies as a governmental function").

### *Maintenance*

{¶76} We must first determine whether the Township was engaged in the "maintenance" of the service department premises under R.C. 2744.01(C)(2)(e).

{¶77} R.C. Chapter 2744 does not define the term "maintenance." Merriam-Webster's online dictionary defines "maintenance" as "the upkeep of property or equipment." https://www.merriam-webster.com/dictionary/maintenance (accessed Feb. 2, 2020).

{¶78} Prior to the accident, Mr. Bularz utilized the backhoe to uproot a tree and transport extra dirt. Uprooting a tree and transporting soil are obviously maintenance activities because they involve the upkeep of the service department premises. However, Mr. Bularz was not engaged in these activities when Mr. Alcus was injured and his vehicle damaged. *See Murray v. Chillicothe,* 164 Ohio App.3d 294, 2005-Ohio-5864, ¶17 (4th Dist.) ("Because [appellant's] injury did not result from the catch-basin grate's being in a state of disrepair, we cannot say that this case involves the maintenance of a storm-sewer system"). At most, Mr. Bularz's parking of the backhoe related to the upkeep of the backhoe rather than the service department premises. Therefore, we conclude that the parking of the backhoe does not constitute "maintenance" of public grounds under R.C. 2744.01(C)(2)(e).

### Definition of Public Grounds

**{¶79}** Even if we construed Mr. Bularz's activity at the time of the accident as involving the maintenance the service department premises, these premises do not constitute "public grounds" as contemplated by R.C. 2744.01(C)(2)(e).

**{¶80}** R.C. Chapter 2744 also does not define the term "public grounds." According to the Supreme Court of Ohio, "[t]he term, 'public grounds,' contemplates areas to which the public may resort and within which it may walk, drive or ride, etc." and involves property that is "established and maintained for and open to the general public, and to which the general public are invited to come." *Standard Fire Ins. Co. v. Fremont*, 164 Ohio St. 344, 347 (1955); *Cleveland v. Ferrando*, 114 Ohio St. 207, 210 (1926).

**{¶81}** Examples of "public grounds" include publicly owned and controlled parks and swimming pools. *See, e.g., Ferrando* at 210 ("Municipally owned and controlled parks, established and maintained for and open to the general public, and to which the general public are invited to come, are, in the fullest sense, public grounds"); *Cater v. Cleveland*, 83 Ohio St.3d 24, 30 (1998), *abrogated by M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336 ("We find that an indoor municipal swimming pool, which is open to the general public, also falls within the definition of 'public grounds'").

**{¶82}** The Eighth District applied the definition of "public grounds" in *Pesta v. Parma*, 8th Dist. Cuyahoga No. 94395, 2010-Ohio-4897. In *Pesta*, an individual was walking on city-owned property when he fell down a ravine and was killed. *Id*. at ¶2. The ravine was on the east side of South Park Boulevard. *Id*. at ¶19. A public park, including a play area, was on the west side of the street. *Id*. There was a gravel "turn-around" on the east side that was used by the public and by municipal police, fire, and service

22

department employees. *Id.* The appellant argued that the property was only owned by the city, so that its maintenance of the property should be considered a proprietary function. *Id.*

{¶83} In addition to recognizing the Supreme Court of Ohio's holdings in *Standard Fire* and *Ferrando*, the Eighth District stated that "not all land owned by a political subdivision should be considered 'public grounds'" and that "[t]he mere fact that property may be owned by a political subdivision does not mean the public is invited there." *Id.* at ¶20.

{¶84} The court ultimately determined there were genuine issues of material fact as to whether the property constitutes public grounds. *Id.* at ¶21. Evidence indicated the property on the east side of South Park Boulevard "was not developed with walking trails, sidewalks, play areas or the like," while "the existence of the turn-around and its location across the street from a public park area suggests that the public was invited there." *Id.*

{¶85} In *Marshall v. Portsmouth*, 11 Ohio Misc. 123 (C.P.1967), the Scioto County Court of Common Pleas considered whether a parking lot used in connection with a municipal hospital constituted "public grounds." The court rejected the "widest meaning" of the term, which would be "any ground owned by the public." *Id.* at 124. The court concluded that the parking lot was a "public ground" because it "was intended to be used for travel in that it was to be driven on and walked on," "it was opened to the public by municipal authorities," and "it was being used by plaintiff in the ordinary mode and for the purpose for which it was created." *Id.* at 126.

### The Trial Court's Determinations

{¶86}  In this case, the trial court determined the service department is "*on* public grounds."  (Emphasis added.)  However, the correct inquiry is whether the service department premises *are* public grounds.

{¶87}  The trial court did not cite or apply the above authorities regarding the definition of "public grounds."  Rather, the trial court quoted a portion of R.C. 505.262(A) that authorizes townships to "contract for the purchase of equipment, buildings, and sites, or for the construction of building, for any lawful township purpose."  This statutory provision does not use the term "public grounds" or provide any insight into its meaning.

{¶88}  The trial court also quoted portions of R.C. 5709.121(A) for the proposition that "real property belonging to a political subdivision shall be considered as used exclusively for public purposes by the political subdivision if it is used by the political subdivision."  This is not an accurate quotation of the statutory provisions.  In addition, R.C. 5709.121 relates to whether real or tangible personal property "belonging to a charitable or educational institution or to the state or a political subdivision" is considered "as used exclusively for charitable or public purposes" for the purposes of exemption from real estate taxes.  It is inapplicable to the present matter.

{¶89}  Further, the trial court considered the entire Haskins Road property in determining the existence of "public grounds."  The evidence indicates that the Haskins Road property contains other unrelated areas besides the service department premises, including, among other things, a recycling center and a public park and picnic area.  Applying the definition of "public grounds" to the entire Haskins Road property is impractical.

{¶90} Courts that have applied the definition of "public grounds" have focused on the portion of the property where the incident took place rather than the entire property. For example, in *Pesta*, the Eighth District considered whether a ravine was "public grounds" where it was located adjacent to a public park, including a play area, and a gravel "turn-around." *Id*. at ¶19. In *Marshall*, the common pleas court considered whether a parking lot used in connection with a municipal hospital constituted "public grounds." *Id*. at 123. Similarly, in *Pettit v. Perry Cty. Commrs.*, 5th Dist. Perry No. 10-CA-07, 2011-Ohio-572, the Fifth District determined whether a parking lot of a county-owned license bureau constituted "public grounds." *Id*. at ¶15.

{¶91} Thus, while the accident occurred within the Haskins Road property, it specifically occurred within the maintenance area of the service department premises.

### *Public Grounds Analysis*

{¶92} The facts regarding the public's use of the service department premises are not in dispute. During the service department's hours of operation (7:00 a.m. to 3:00 p.m., Monday through Friday), it is open to the public. Members of the public may enter through the open gate. The public typically comes to the service department to file a complaint, ask a question regarding a service (e.g., cemetery, grounds keeping), rent a township property (e.g., dining hall for an event), or address other business. All visitors are required to sign in at the service department office, where most of their concerns or issues are addressed.

{¶93} This evidence suggests that the service department *office* is generally open to the public to address relevant business. However, the office does not constitute "public grounds." The definition of "governmental function" set forth in R.C. 2744.01(C)(2)(g)

25

references "buildings," including "office buildings." In addition, R.C. 2744.02(B)(4) references "the grounds of * * * buildings." Since the terms "public grounds," "grounds," and "buildings" are used separately in the immunity statute, they are intended to have different meanings. *See State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, ¶23.

{¶94} The evidence also indicates that on occasion, visitors may walk or drive to other locations within the premises. However, visitors are not permitted to freely come into the maintenance area. A service department employee typically escorts or accompanies them as a measure of safety and to make sure they reach the correct destination pertinent to their particular issue.

{¶95} While the maintenance area may constitute "grounds," it does not constitute "public grounds." Unlike the public park in *Ferrando*, the parking lot in *Marshall*, or the swimming pool in *Cater*, the maintenance area is not "established and maintained for and open to the general public." *See Ferrando* at 210. Rather, the maintenance area is established and maintained for service department employees to perform their job duties and to store Township equipment and vehicles. Unlike the parking lot in *Marshall*, the purpose for which the maintenance area was created appears to be nonpublic in nature.

{¶96} The general public is also not "invited" to the maintenance area. *See Ferrando* at 210. It is not even generally open to members of the public that visit the service department. Because of safety concerns and relevancy, access to this area is restricted to Township employees, necessary members of the public, and business invitees such as Mr. Alcus. *See Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986) ("Business invitees are persons who come upon the premises of another, by invitation,

26

express or implied, for some purpose which is beneficial to the owner"). A Township employee must accompany these permitted visitors, which further limits their access.

{¶97} The Township, distinguishing *Pesta*, argues that the fact the service department premises are developed suggests it is "public grounds." However, the critical issue in *Pesta* was not that the property was undeveloped. Rather, it was unclear whether the public was invited there because the property was adjacent to obvious "public grounds" such as a public park and turnaround. *See id.* at ¶21. Unlike in *Pesta*, the Township's undisputed restrictions on the use of the maintenance area demonstrate that only the front office is intended for general public use.

{¶98} The Township acknowledges that it "regulates" the "use" of the maintenance area but argues that "all public facilities must have some kind of regulations regarding their use," such as a public school, citing *Fairlawn v. Fraley*, 9th Dist. Summit No. 9827, 1981 WL 3850 (Feb. 11, 1981).

{¶99} *Fraley* involved the meaning of the term "public place" in the context of posting ordinances, not the meaning of "public grounds" or even the issue of statutory immunity. *See id.* at *4. While it is true that members of the public "may not wander into a public school at will," *see id.* at *5, public schools are unquestionably intended for public use. Here, the public's highly restricted use of the service department's maintenance area is ancillary to its intended nonpublic purpose.

{¶100} Accordingly, even assuming Mr. Bularz was engaged in "maintenance" at the time of the accident, he was not maintaining "public grounds."

27

### Regulating the Use of Public Grounds

{¶101} Alternatively, the Township argues that if it was not engaged in the "maintenance of public grounds" at the time of the accident, it was engaged in "the regulation of the use of, and the maintenance and repair of, * * * public grounds" under R.C. 2744.01(C)(2)(e). The Township claims that its "rule or directive of the use of the Service Department's premises, in and of itself, constitutes a 'governmental function.'" However, the Township's regulation of the public's use of the service department premises was not the cause of the accident.

{¶102} Based on the foregoing, we conclude the Township's activity at issue in the present case – specifically, parking the backhoe, or, more broadly, maintaining nonpublic grounds of the service department - does not fall within those specified as a "governmental function" in R.C. 2744.01(C)(2)(e).

### Governmental Function - R.C. 2744.01(C)(1)(c)

{¶103} Since the Township's activities do not constitute a "specified" governmental function, we must apply the general definitions of "governmental function" set forth in R.C. 2744.01(C)(1)(a), (b), and (c). *See Greene Cty.* at 557.

{¶104} R.C. 2744.01(C)(1)(c) provides that a "governmental function" includes "[a] function that promotes or preserves the public peace, health, safety or welfare [and] that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons * * *."

{¶105} The trial court found that the Township was also engaged in a governmental function under R.C. 2744.01(C)(1)(c) because it was disposing of toolboxes by internet auction. The trial court determined that while "auctions are not uniquely governmental,"

28

the Township's sale of toolboxes and requiring them to be picked up at its service department was "part of the highly regulated overarching governmental function of acquiring and disposing of equipment used to maintain" public grounds and buildings "used in connection with the performance of a governmental function." As support, the trial court noted that a township is authorized to sell equipment and tools pursuant to the procedures set forth in R.C. 505.10.

{¶106} However, the Township's sale of the toolboxes was not the cause of the accident. This activity simply occurred in the vicinity of where Mr. Bularz parked the backhoe. And even if parking a backhoe "promotes or preserves the public peace, health, safety, or welfare," nongovernmental persons engage in such activity all the time. Accordingly, the Township was not engaged in a governmental function under R.C. 2744.01(C)(1)(c).

### *Governmental Function - R.C. 2744.01(C)(1)(a)*

{¶107} R.C. 2744.01(C)(1)(a) provides that a "governmental function" includes "[a] function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement."

{¶108} The Township argues that R.C. 723.01 imposes a duty on "municipal corporations" to maintain trees near public roads and/or on public grounds and that the Revised Code also imposes such obligations on townships.

{¶109} Even assuming Mr. Bularz was maintaining the service department premises, there is no evidence that the tree he removed was near a "public road." And as demonstrated above, the service department premises do not constitute "public grounds."

29

{¶110} Further, the removal of trees on nonpublic grounds are hardly the type of duties the Supreme Court of Ohio has recognized as being "imposed upon the state as obligations of sovereignty," such as "protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property." *Greene Cty.* at 558, quoting *Wooster v. Arbenz*, 116 Ohio St. 281, 284 (1927).

{¶111} Finally, the statutes that the Township cites are inapplicable. R.C. 723.01, by its express terms, applies to "municipal corporations." Townships are not municipal corporations. *Golubski v. U.S. Plastic Equip., L.L.C.*, 11th Dist. Portage No. 2015-P-0001, 2015-Ohio-4239, ¶53, citing *Carroll v. Washington Twp. Zoning Comm.*, 56 Ohio St.2d 164, 167 (1978).

{¶112} None of the cited statutes that are applicable to townships involve the removal of trees on nonpublic grounds. *See* R.C. 511.32 (relating to public parks, public squares, or grounds devoted to public uses for park purposes); R.C. 505.87 (relating to the abatement, control, or removal of vegetation, garbage, refuse, or other debris from land in the township); R.C. 5571.08 (requiring the board of trustees to keep all township roads free from obstruction by snow); R.C. 5571.10 (relating to landscaping and beautification projects along roads); and R.C. 5571.12 (dragging graveled and unimproved roads). Accordingly, the Township was not engaged in a governmental function under R.C. 2744.01(C)(1)(a).

### *Governmental Function - R.C. 2744.01(C)(1)(b)*

{¶113} R.C. 2744.01(C)(1)(b) provides that a "governmental function" includes "[a] function that is for the common good of all citizens of the state." The Township argues

30

that the "legislative duty imposed" on it to maintain trees on its grounds meets this criterion. We disagree.

{¶114} As demonstrated above, there is no legislative duty imposed on the Township to maintain trees on its grounds. Further, the Supreme Court of Ohio addressed the scope of R.C. 2744.01(C)(1)(b) in *Greene Cty.* According to the court, "[a]ny activity that promotes or preserves the public peace, health, safety, and welfare would also fall within a broad definition of what is for the common good of all citizens of the state, thus obscuring the legislature's purpose in crafting a distinction between activities engaged in or customarily engaged in by nongovernment persons and those that are not." *Id.* at 559, citing R.C. 2744.01(C)(1)(c) and (G)(1)(b).

{¶115} The Township's maintenance of its grounds only benefits some of the citizens of the state, mainly Township employees who work there, and to some extent, the visitors who are permitted access, not all citizens of the state. Accordingly, the Township was not engaged in a governmental function under R.C. 2744.01(C)(1)(b).

{¶116} In sum, we conclude the Township's activity at issue in this case does not constitute a governmental function under R.C. 2744.01(C)(2)(e) or R.C. 2744.01(C)(1)(a), (b), or (c) but is instead a proprietary function. Therefore, the Alcuses have established an exception to immunity under R.C. 2744.02(B)(2) involving an employee's negligent performance of a proprietary function.

### Exception to Immunity - R.C. 2744.02(B)(4)

{¶117} In their second assignment of error, the Alcuses argue the trial erred by granting summary judgment to the Township on the grounds that the exception to immunity set forth in R.C. 2744.02(B)(4) does not apply.

31

{¶118} R.C. 2744.02(B)(4) removes the general immunity conferred on political subdivisions performing a governmental function if the injury is (1) caused by employee negligence, (2) on the grounds or in buildings used in connection with that governmental activity, and (3) due to physical defects on or within those grounds or buildings. (Citations omitted.) *Parmertor v. Chardon Local Schools*, 11th Dist. Lake Nos. 2014-L-129 & 2014-L-133, 2016-Ohio-761, ¶14 ("*Parmertor I*").

{¶119} By its express terms, the exception set forth in R.C. 2744.02(B)(4) can only apply when the political subdivision is engaged in a *governmental* function. Since we have determined the Township was engaged in a *proprietary* function, the Alcuses' second assignment of error is moot. *See* App.R. 12(A)(1)(c).

### Defense to Liability - R.C. 2744.03(A)(5)

{¶120} The Township argues that even if an exception to immunity under R.C. 2744.02(B)(2) or R.C. 2744.02(B)(4) applies in this case, the defense to liability set forth in R.C. 2744.03(A)(5), i.e., the third tier of analysis, reinstates its immunity.

{¶121} The trial court found that third-tier analysis was not required based on its determination that no exceptions to immunity apply. If the defense to liability in R.C. 2744.03(A)(5) applies, however, the Township is entitled to summary judgment on alternate grounds. *See Parker v. Dayton Metropolitan Hous. Auth.*, 2d Dist. Montgomery No. 15556, 1996 WL 339935, *3 (May 31, 1996). Therefore, we will address this argument as part of our de novo review.

{¶122} R.C. 2744.03(A)(5) provides as follows:

{¶123} "In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property

32

allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶124} "* * *

{¶125} "The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶126} The Township argues this provision applies because Mr. Alcus' injuries resulted from the Township's "exercise of judgment or discretion in how to use equipment (i.e. the backhoe)." We disagree.

{¶127} The Supreme Court of Ohio has held that "[t]he nonliability provisions of [R.C. 2744.03] must be read more narrowly than the liability provisions of R.C. 2744.02(B), or the structure of R.C. Chapter 2744 makes no sense at all." *Greene Cty.* at 561. In other words, "the defenses and immunities of R.C. 2744.03 cannot be read to swallow up the liability provisions of R.C. 2744.02(B) so as to render them nugatory." (Citation omitted.) *Yeater v. Bd. of Edn. LaBrae School Dist.,* 11th Dist. Trumbull No. 2009-T-0107, 2010-Ohio-3684, ¶22.

{¶128} We have held that "[s]overeign immunity * * * protects only those charged with weighing alternatives and making choices with respect to public policy and planning characterized by a high degree of discretion and judgment. It does not protect a [political subdivision] from the negligent conduct of its employees in the details of carrying out the activity even though there is discretion in making choices. This is not the type of discretion

33

for which there is immunity as it does not involve public policy endangering the creative exercise of political judgment." *Id*. at ¶25, quoting *Du Bose v. Akron Pub. Schools*, 9th Dist. Summit No. 18707, 1998 WL 208846, *4 (Apr. 29, 1998). *See also Hubbell v. Xenia*, 175 Ohio App.3d 99, 2008-Ohio-490, ¶22 (2d Dist.) ("[R]outine decisions requiring little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance, are not covered by the defense provided in R.C. 2744.03(A)(5)").

{¶129} In *Leasure v. Adena Local School Dist.*, 4th Dist. Ross No. 11CA3249, 2012-Ohio-3071, the Fourth District determined that "[w]hether to set up and use the bleachers according to the manufacturer's specifications involved a routine matter of safe and proper operation of school equipment." *Id*. at ¶34. Therefore, the court concluded "[o]perating them in a safe manner and in accordance with the manufacturer's specifications does not involve the creative exercise of political judgment" under R.C. 2744.03(A)(5). *Id.*

{¶130} In *Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. Delaware No. 2013 CAE 01 0009, 2013-Ohio-3907, the Fifth District held that "the removal of the reflective tape and lighting from the orchestra pit * * * does not involve the type of decision-making characterized by a high degree of discretion and judgment." *Id*. at ¶29.

{¶131} Here, as in *Leasure* and *Jones*, Mr. Bularz's decision whether to use the parking brake on the backhoe was a routine matter of safe operation. It involved parking the backhoe in accordance with the manufacturer's recommendations and his training rather than a high degree of discretion or judgment. His failure to do so portrayed inadvertence, inattention, and/or unobservance. *See Hubbell* at ¶22.

34

{¶132} The Township urges us to adopt the holding in *Fields v. Talawanda Bd. of Edn.*, 12th Dist. Butler No. CA2008-02-035, 2009-Ohio-431, where the Twelfth District determined that "the use or non-use of equipment or safety devices constitutes an exercise of judgment or discretion within the purview of R.C. 2744.03(A)(5)." *Id*. at ¶13. However, *Fields* and the cases on which it relies involve teachers instructing their students in the use of equipment. *See id.* Plus, the *Fields* court did not acknowledge the Supreme Court of Ohio's directive in *Greene Cty.* to narrowly construe the defenses to liability in R.C. 2744.03. Thus, we find *Fields* to be inapposite.

{¶133} Even if Mr. Bularz's decision constituted the type of discretion contemplated by R.C. 2744.03(A)(5), as demonstrated below, there are genuine issues of material fact as to whether Mr. Bularz exercised his discretion in a reckless or wanton manner. Accordingly, the Township has not established the defense to liability set forth in R.C. 2744.03(A)(5) as a matter of law.

{¶134} In sum, the Alcuses met their burden to establish an exception to the Township's immunity under R.C. 2744.02(B)(2). Whether the Alcuses also met their burden to establish an exception to the Township's immunity under R.C. 2744.02(B)(4) is moot. The Township did not meet its burden to establish the defense to liability under R.C. 2744.03(A)(5). Therefore, the trial court erred in ruling that the Township was entitled to political subdivision immunity as a matter of law.

{¶135} The Alcuses' first assignment of error has merit, and its second assignment of error is dismissed as moot.

35

**Mr. Bularz's Immunity**

{¶136} In their third assignment of error, the Alcuses argue the trial erred by granting summary judgment to Mr. Bularz. Specifically, the Alcuses argue the trial court erred by determining (1) Mr. Bularz was not sued in his individual capacity, and (2) no genuine issues of material fact exist as to whether Mr. Bularz engaged in reckless or wanton conduct.

{¶137} Immunity is also extended to individual employees of political subdivisions. (Citations omitted). *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶10. For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used. (Citation omitted.) *Id.* Rather, R.C. 2744.03(A)(6) sets forth the immunity of political-subdivision employees and the exceptions thereto. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶21.

{¶138} R.C. 2744.03(A) specifies that the defenses and immunities contained within that section may be asserted "in connection with a governmental or proprietary function." *Greene Cty.* at 561, citing R.C. 2744.03(A). Therefore, regardless of whether the Township engaged in governmental or proprietary functions in conducting the activities at issue, Mr. Bularz is immune in his individual capacity unless his acts satisfy the standards of R.C. 2744.03(A)(6) exposing him to personal liability. *See id.*

{¶139} Relevant here is R.C. 2744.03(A)(6)(b), which provides, in pertinent part, that "[i]n a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function,

36

* * * the employee is immune from liability unless * * * [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

### *Individual Capacity*

{¶140} The trial court determined that R.C. 2744.03(A)(6) did not apply because the complaint does not show that Mr. Bularz was sued in his individual capacity, citing this court's decision in *Parmertor I.*

{¶141} For purposes of political-subdivision immunity, a suit against a political-subdivision employee in his or her official capacity is treated the same as a suit against the political subdivision itself, and a three-tiered analysis applies. *Rural Bldg. of Cincinnati, LLC v. Mercer*, 1st Dist. Hamilton No. C-160760, 2017-Ohio-7226, ¶19. Whether an action is brought against a political-subdivision employee in an individual or official capacity requires a review of the language used in the complaint. *Id.*

{¶142} In *Parmertor I*, we held that the plaintiffs had only sued the members of a board of education in their official capacities as opposed to their individual capacities because (1) "the substance of the [complaint] fails to specifically allege the board members transcended their official duties," (2) "the allegations state the board members were acting in their official capacity," and (3) "there are no allegations that any of the board members took any personal actions that would indicate intentional or reckless conduct that could create a causal nexus between them individually and the injuries that resulted from the incident." *Id.* at ¶32.

{¶143} By contrast, in *Doe v. Licate*, 11th Dist. Ashtabula No. 2018-A-0019, 2019-Ohio-412, we found that a school district transportation supervisor was sued in his individual capacity where (1) the allegations of the complaint did not challenge any

37

policies and practices of the transportation supervisor's office, (2) neither the board of education nor the school district were named in the complaint, and (3) the complaint alleged the employee "personally engaged in actions that subject him to liability as an employee of [the school district]." *Id.* at ¶43.

{¶144} In their complaint, the Alcuses alleged that Mr. Bularz was the "last person to operate the backhoe" and that he "negligently, recklessly, and with wanton disregard for the safety of others, decided to leave the backhoe parked on a hill despite being aware that the brakes were malfunctioning, thereby creating a physical defect on the premises" and "failed to secure the backhoe to prevent it from rolling down the hill in the direction" of Mr. Alcus. The Alcuses also sought punitive damages against Mr. Bularz. A request for punitive damages suggests an employee is being sued as an individual. *Thompson v. Buckeye Joint Vocational School Dist.*, 5th Dist. Tuscarawas No. 2015AP080047, 2016-Ohio-2804, ¶40. Therefore, the Alcuses sufficiently alleged in their complaint that Mr. Bularz personally engaged in actions that subject him to individual liability as an employee.

{¶145} The Township argues that because the Alcuses also alleged Mr. Bularz was "acting within the course and scope of his employment" with the Township, he was not sued individually. However, this argument misconstrues R.C. 2744.03(A)(6). Under R.C. 2744.03(A)(6)(a), an employee may be subject to liability if his or her "acts or omissions were manifestly outside the scope of the employee's employment." Here, the Alcuses alleged Mr. Bularz is liable under R.C. 2744.03(A)(6)(b), involving "acts or omissions * * * with malicious purpose, in bad faith, or in a wanton or reckless manner." Thus, whether

38

Mr. Bularz acted within the course and scope of his employment is not relevant to whether he can be held liable under R.C. 2744.03(A)(6)(b).

### *Wanton or Reckless Conduct*

{¶146} The trial court also determined that even if the Alcuses sued Mr. Bularz in his individual capacity, there was no evidence he "acted outside the scope of his employment, acted with malicious purpose, in bad faith, or in a wanton or reckless manner, or is subject to liability expressly imposed by statute." The Alcuses argue genuine issues of material fact exist as to whether Mr. Bularz engaged in reckless or wanton conduct. They do not the assert that Mr. Bularz acted outside the scope of his employment, with malicious purpose, or in bad faith.

{¶147} We have held that whether wanton or reckless behavior exists is generally a question of fact to be resolved by the jury. (Citations omitted.) *Parmertor v. Chardon Local Schools*, 11th Dist. Lake No. 2018-L-035, 2019-Ohio-328, ¶ 42, *appeal not allowed*, 156 Ohio St.3d 1405, 2019-Ohio-2261. "Summary judgment is appropriate only when the facts are clear and fail to rise to the level of conduct that could be construed as * * * wanton [or] reckless." (Citations omitted.) *Id.*

{¶148} The Supreme Court of Ohio has held that "reckless" and "wanton" describe different and distinct degrees of care that are not interchangeable. *Anderson*, *supra*, at ¶31. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." (Citations omitted). *Id.* at ¶34. "Reckless conduct is characterized by a substantial and unjustifiable risk of harm to others

and a conscious disregard of or indifference to the risk, but the actor does not desire harm." (Citation omitted.) *Id.*

{¶149} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." (Citation omitted.) *Id.* at ¶33. "[O]ne acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results." (Citation omitted.) *Id.*

{¶150} In this case, Mr. Bularz parked the running backhoe on an incline and did not engage the parking brake, despite the manufacturer's recommendation, the applicable OSHA regulation, and his training. Although he lowered the front loader bucket, he did so facing the maintenance garage, which was of questionable effectiveness. Further, the Alcuses dispute whether the bucket was touching the ground. On the other hand, Mr. Bularz surveyed the area while parking the backhoe, and there is no evidence to indicate he was aware Mr. Alcus would be arriving at the premises. The evidence also suggests the backhoe did not begin rolling immediately. The parties appear to disagree regarding the materiality of Mr. Bularz parking on the incline.

{¶151} To resolve these issues, it is necessary to weigh conflicting evidence and determine an ultimate fact where different minds might reasonably arrive at different conclusions. *Thompson v. Smith*, 178 Ohio App.3d 656, 2008-Ohio-5532, ¶46 (11th Dist.). This function is to be performed by the jury, not a court. *Id.*

{¶152} In sum, the Alcuses sued Mr. Bularz in his individual capacity, and there are genuine issues of material fact as to whether Mr. Bularz's conduct was reckless or wanton

under R.C. 2744.03(A)(6)(b).  Therefore, the trial court erred in ruling that Mr. Bularz was entitled to immunity as a matter of law.

{¶153} The Alcuses' third assignment of error has merit.

{¶154} Based on the foregoing, the trial court erred in granting summary judgment to the Township and to Mr. Bularz based on political subdivision immunity under R.C. Chapter 2744.  Thus, we reverse the judgment of the trial court and remand for further proceedings.


TIMOTHY P. CANNON, P. J.,

CYNTHIA WESTCOTT RICE, J.,

concur.