[Cite as *Angelo v. Warren*, 2021-Ohio-1260.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| HENRY J. ANGELO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-T-0072** |
| CITY OF WARREN, OHIO, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2019 CV 00935.

Judgment: Affirmed.

*Michael D. Rossi*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellee).

*James A. Climer*, *Amily A. Imbrogno*, and *Frank H. Scialdone*, Mazanec, Raskin & Ryder Co., LPA, 100 Franklin's Row, 34305 Solon Road, Cleveland, OH 44139 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, the City of Warren, appeals from the decision of the Trumbull County Court of Common Pleas, denying its motion for summary judgment on the grounds of qualified immunity. For the following reasons, we affirm the decision of the lower court.

{¶2} On June 4, 2019, plaintiff-appellee, Henry J. Angelo, filed a Complaint against Warren. The Complaint alleged that the City of Warren Water Department's

employees "negligently managed Plaintiff's account, terminating the service to his home without legally-adequate cause or excuse." He alleged that this resulted in "extensive property damage to his home."

{¶3} Warren filed an Answer on July 31, 2019, in which it alleged immunity as a defense.

{¶4} On March 19, 2020, Warren filed a Motion for Summary Judgment in which it alleged it was immune from Angelo's claim because it was not on notice of any reason it should not have terminated his water service and, as a result, no exception to immunity applied. It alleged that, even if an exception to immunity did apply, immunity was restored under R.C. 2744.03(A)(3) and (5) since "all actions taken by Warren employees were with respect to policy-making or judgment or discretion in determining how to use personnel and other resources, and there is no evidence that any Warren employee acted with malicious purpose, in bad faith, or in a wanton and reckless manner."

{¶5} Pursuant to the deposition testimony, Angelo was a resident of Warren who utilized its water service. Patrick Calvey, Water Service Supervisor, testified that a clerical employee noticed that the water usage at Angelo's residence had been estimated rather than read from the meter from January to November 2017, resulting in the need to check the meter and a work order being issued. A service representative, Greg Edwards, placed a blue tag on Angelo's door on November 15, 2017, which stated that the water department had been there and instructed the resident to call for an appointment within 72 hours to "check the meter."

{¶6} Angelo testified that he saw the blue tag on his door on November 15 at around 5 p.m. He left to visit his son in Maryland the following morning and started a

"series of phone calls to the water department" during the drive. He testified as to making six calls which were answered but he was placed on hold "as much as five minutes sometimes." He placed a seventh call to the water distribution department rather than the number on the tag, a woman answered, stated, "I'll get you through to somebody," the call was transferred, and the person who picked up stated, "Please hold. I'll be right with you." Angelo was placed on hold for a couple of minutes and hung up. He then called a friend who worked for the water department, Michael Thigpen, explained the situation, and Thigpen stated, "I'll take care of it" and "don't worry about it." Thigpen, the Water Distribution Superintendent who oversees construction and water supply, testified that he has known Angelo for approximately 30 years. According to Thigpen, Angelo called him about the tag because he had "a hard time getting through to the billing division" and "was put on hold for a long duration." Thigpen testified that he told Angelo he would look into it, checked with a meter room coordinator, and verified the tag did not come from his division. Thigpen then spoke with Calvey in the water department parking lot, explained the situation, and requested they hold the work order until Angelo returned from vacation. According to Thigpen, Calvey responded that he "would take care of it." Calvey testified that he did not recall any communication with Thigpen regarding Angelo's account.

{¶7} According to Calvey and the written work order, on December 12, 2017, a yellow tag which stated that the customer should call for an appointment within 48 hours and failure to do so would result in termination of service, was left on Angelo's door and the water was shut off on December 19, 2017. Testimony established that the tag procedure was the common practice in this type of situation and that the amount of time

3

it took to terminate water service could vary based upon manpower and workload.

{¶8} Angelo testified that when he returned home from Maryland on January 9, 2018, the pipes connected to the radiators for the boiler were split or blown out and water was pouring down the walls in his basement, causing damage throughout the home. He called Thigpen, who stated, "I did it. I took care of it. I don't know what the hell these guys did." According to Calvey, the water was turned on January 10 and the water meter register head was replaced inside the home.

{¶9} Angelo filed a Memorandum Contra to Defendant's Motion for Summary Judgment on July 22, 2020, arguing genuine issues of material fact existed as to immunity.

{¶10} On September 9, 2020, the trial court issued a Judgment Entry denying Warren's Motion for Summary Judgment. It found there was a "question of fact as to whether the immunity exception set forth in R.C. 2744.02(B)(2) applies in the instant case." It further found questions of fact "regarding whether the restoration of immunity outlined in R.C. 2744.03(A)(3) and (5) * * * are applicable under the present set of facts," including "whether any judgment or discretion was exercised and, if so, whether such decision was made with malicious purpose, in bad faith or in a wanton or reckless manner."

{¶11} Warren timely appeals and raises the following assignment of error:

{¶12} "The lower court erroneously denied summary judgment to defendant/appellant City of Warren when it denied it the benefit of immunity under Ohio Revised Code Chapter 2744."

{¶13} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the

4

evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶14} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶15} "R.C. Chapter 2744 sets forth a three tiered analysis for determining a political subdivision's immunity from liability." *Frazier v. Kent*, 11th Dist. Portage Nos. 2004-P-0077 and 2004-P-0096, 2005-Ohio-5413, ¶ 20; *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). First, R.C. 2744.02(A)(1) sets forth a general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B) establishes specific exceptions under which a political subdivision is not immune. "Once general immunity has been established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions apply." *Alcus v. Bainbridge Twp.*, 2020-Ohio-543, 152 N.E.3d 340, ¶ 58 (11th Dist.). If one of these exceptions applies, "the political subdivision

5

has the burden of showing that one of the defenses to liability in R.C. 2744.03 applies and, if so, immunity is reinstated." *Id.* at ¶ 59.

{¶16} Warren argues that Angelo failed to establish any applicable exceptions to immunity under R.C. 2744.02(B)(1)-(5). The exception at issue here is set forth in R.C. 2744.02(B)(2): "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." In pertinent part, proprietary functions include "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system." R.C. 2744.01(G)(2)(c). "[B]efore R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action - duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a proprietary function." *Alcus* at ¶ 63.

{¶17} As to the negligent performance of acts by an employee in this case, an argument was established by Angelo that he communicated to an agent of the water company that he would be out of town and thus, unavailable to grant access to the water department to check the water meter. Although receiving such communication, when construing the facts in Angelo's favor, it still chose to turn off his water, which arguably resulted in the problems with the boiler and radiator causing damage to his home. Given the evidence presented, we agree with the lower court that this created at the least an issue of fact as to the application of the immunity doctrine pursuant to R.C. 2744.02(B)(2)

6

and (G)(2)(c), such that it could not be decided as a matter of law.

{¶18} Warren sets forth several arguments against this conclusion. First, it argues that Angelo failed to properly communicate with the water department which justified turning off his water. However, since there is a factual dispute as to this issue, it is properly reserved for proceedings beyond summary judgment. *See Weitzel v. Trumbull Cty. Commrs.*, 11th Dist. Trumbull No. 2014-T-0034, 2014-Ohio-5620, ¶ 22 ("[t]he purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist") (citation omitted). When Angelo received notice that he needed to contact the water department to avoid a water shutoff, under the evidence presented, he reached out to Thigpen, the Water Distribution Superintendent. Both men testified that Angelo did inform Thigpen that he would be going out of town the next day. Thigpen testified that he communicated to Calvey that Angelo was out of town and, thus, his water should not be shut off, although Calvey denied receiving this communication. Construing the evidence in favor of the non-moving party, we must presume that Thigpen communicated to Calvey that Angelo was out of town. Under these circumstances, Warren's argument that there was no evidence that the political subdivision had actual or constructive notice of the condition causing the injury must fail at the summary judgment stage. *See Franklin v. Columbus*, 130 Ohio App.3d 53, 62, 719 N.E.2d 592 (10th Dist.1998) (where an affidavit was presented that a third party had knowledge of defendant's notice requesting termination of water service and the city claimed it had no record of such request, evidence was presented creating a genuine issue of material fact regarding whether the city was requested to turn off the water).

{¶19} While Warren specifically contends that Angelo failed to take certain

actions to communicate with the water department such as visiting the department or sending an e-mail or fax, this does not negate the evidence that he contacted an employee. While we do not disagree that Angelo's impatience with waiting on hold would not absolve him of the duty to contact the water department, it also does not negate the fact that he did take action to speak with someone about this issue. It is unclear why faxing or e-mailing the water department would be sufficient to satisfy its requirement to avoid a water shutoff but transmitting a communication to the Water Service Supervisor would not, particularly when there is testimony on the record from Thigpen that Calvey said he would "take care of it."

{¶20} Warren also argues that an employee's knowledge is imputed to his employer only if the employee obtained the knowledge while acting within the scope of his employment. Testimony was presented that Angelo called Thigpen on his cell phone because they were friends or acquaintances and Angelo knew he worked for the water department. Even presuming that Thigpen was not acting in the scope of his job because he received the information from a friend, through his cell phone, and not an official channel, there is a genuine issue of fact as to whether a negligent act was committed by Calvey after he was informed by Thigpen of Angelo's situation. Calvey receiving a communication from a fellow employee of the water department about a customer would appear to be within the scope of his employment. This case is distinguishable from *Hallowell v. Athens*, 4th Dist. Athens No. 03CA29, 2004-Ohio-4257, cited by Warren, where a county employee who worked in the solid waste district had knowledge of a danger in the roadway and the court found this was beyond the scope of his employment. In *Hallowell*, the employee worked for an entirely different department, not just a separate

8

part of the same department but, more importantly, he did not communicate his knowledge to someone working in the pertinent department with the ability to address the concern. *Id.* at ¶ 10-11.

{¶21} Warren also argues that it was not on notice that Angelo had a boiler and thus, lacked knowledge of the condition leading to the property damage. While it is accurate that there was no testimony Angelo informed the water department that he had a boiler, Calvey did testify that he was aware that boilers are utilized to heat homes and that, if one turned off water service in the middle of the winter "the boiler would either cease to run or it would blow up, yes. There's a safety arm that would cease to run once the boiler got too low." Being generally aware that boilers are utilized and that turning off water can cause serious consequences makes it arguably foreseeable that this type of outcome could occur under these circumstances. The turning off of the water itself can be seen as the condition that could cause damage.

{¶22} Finally, Warren emphasizes that, even if it was aware of a boiler in Angelo's home, it was not required to "abandon its established practices, especially after giving two notices and several weeks of lead time to Plaintiff of the impending shutoff." We do not agree. If the water department is on notice of a condition that could cause damage to a customer's house, the practice of shutting off the water anyway, when the customer has not failed to pay or otherwise done anything to warrant the shutoff and there is only the need to check the functioning of the water meter, is not reasonable. Such an argument by Warren is particularly unconvincing when there was apparently a period of many months when the meter was not working properly but no action was taken by the city to remedy it. It can hardly be said that taking quick action to shut off the water was

9

necessary in such circumstances, especially considering the repair ultimately performed could not be made until the customer returned and access was granted to the inside of the home. Having an established practice does not mean such practice should be followed if it is negligent.

{¶23} Since the exception to immunity applies, we must now consider whether one of the defenses to liability in R.C. 2744.03 allows for reinstatement of immunity. The defenses to nonliability Warren alleges apply are R.C. 2744.03(A)(3) and (5): that it is immune from liability because "the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee" or that the loss of property "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(3) and (5). The Ohio Supreme Court has held that "[t]he nonliability provisions of [R.C. 2744.03] must be read more narrowly than the liability provisions of R.C. 2744.02(B), or the structure of R.C. Chapter 2744 makes no sense at all." *Greene Cty. Agricultural Soc*, 89 Ohio St.3d at 561, 733 N.E.2d 1141.

{¶24} For to apply, an employee must be exercising policy-making, planning, or enforcement powers; "[t]his provision does not apply to routine, ministerial decisions." *Mason v. Bristol Local School Dist. Bd. of Edn.*, 11th Dist. Trumbull No. 2005-T-0067, 2006-Ohio-5174, ¶ 40. Warren fails to demonstrate how the exercise of such powers

10

occurred. As argued by Angelo, the dispute in the present matter turns upon whether Calvey was aware of Angelo's communication and thereby acted to prevent the water shut off. Failure to communicate a customer's response to a request to check the water meter is routine and does not require an exercise of policy-making, planning, enforcement, or discretion and, therefore, would not fall under the narrow nonliability provision set forth in R.C. 2744.03(A)(3).

{¶25} As to R.C. 2744.03(A)(5), it has been held that "[r]outine decisions requiring little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance, are not covered by the defense provided in R.C. 2744.03(A)(5)." *Alcus*, 2020-Ohio-543, ¶ 129, citing *Hubbell v. Xenia*, 175 Ohio App.3d 99, 2008-Ohio-490, 885 N.E.2d 290, ¶ 22 (2d Dist.). Here, the failure of Calvey to communicate to others within the water department regarding Angelo's situation and to stop the water from being shut off more closely resembles inadvertence than an exercise of discretion. Warren failed to demonstrate a defense to liability which would support a finding of immunity at the summary judgment stage. *See Calet v. East Ohio Gas Co.*, 2017-Ohio-348, 83 N.E.3d 218, ¶ 17 (9th Dist.) ("as the City has not pointed to evidence indisputably demonstrating that Calet's injuries resulted from a specific decision, or heightened degree of official judgment, pertaining to the water curb box at issue in this case, we cannot say that the trial court erred in concluding that the City was not entitled to immunity from liability pursuant [to] R.C. 2744.03(A)(5) at the summary judgment phase").

{¶26} The sole assignment of error is without merit.

{¶27} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, denying Warren's motion for summary judgment, is affirmed. Costs to

11

be taxed against appellant.

MARY JANE TRAPP, P.J.,

THOMAS R. WRIGHT, J.,

concur.